# Ferraro *v.* Pittsburgh Terminal Coal Corporation, Appellant.

Argued April 15, 1940. ▮▮▮▮▮▮▮▮▮▮▮

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ. ▮▮▮▮▮▮▮▮▮

*Sidney J. Watts,* for appellant.

*J. Ernest Isherwood,* for appellee.

OPINION BY CUNNINGHAM, J., October 4, 1940:

The broad and fundamental question of law involved under this appeal in a workmen's compensation case is whether the claimant has met the burden of proving by substantial and competent evidence that his disability was caused by an "injury by an accident in the course of his employment" (within the meaning of Section 301 of our Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §411), rather than by the presence of certain conceded spinal deformities and the natural progress of a preexisting osteo-arthritis.

The referee made an award for total disability; the board affirmed and the common pleas entered judgment thereon; this appeal by the employer followed.

The main facts and surrounding circumstances of the incident upon which claimant relies as entitling him to compensation are not in dispute—the difficulty lies in the application of the law to them.

Claimant, fifty-four years of age, had been employed for many years as a coal miner. In the course of his employment in one of the mines of appellant on March 11, 1936, he and his "buddy" were loading coal into mine cars with hand shovels. His description of the alleged "accident" reads: "Q. Did anything happen to you on March 11, of this year? A. Yes, I was load coal and at time I load coal I start get pain in my back and at the same time in my leg—the muscles in my leg get sore. I was shovel coal with right hand and I can't shovel it was too close to me and buddy shovel with left hand. Q. This place, where you were working, how big a place were you working in? A.

Wide place all right, about 30 to 32 feet wide—I can't load more than three cars of coal—my buddy work close to me and no got chance to work. Q. What time of the day was it that this happened? A. Dinner time. Q. What time did you go to work that morning? A. Seven o'clock in the morning. Q. Did you work any more after that? A. No, sir. Q. When you got this pain where was the pain? A. The pain started in my back and then leg; went down my left leg; the leg sleep, the nerves get tight and get stiff on me. Q. Did you fall down? A. Sure, I can't stand up. Q. Did you work any more that day? A. No—I lay down—I call my buddy—I can't work and my buddy say lay down—I can't work. Q. How did you get out of the mine? A. I call the driver and he ask me what is the matter and I tell him what was the matter—I say my leg can't stand up. Q. Did the driver take you out of the mine? A. Yes. Q. Did you go to the doctor? A. Yes. ...... Q. Did you ever have any trouble with your back and your left leg before this? A. Once in 1918. Q. And did that get better? A. Yes. Q. How long were you working for this company when this happened? A. Since 1926—I was working in this mine in 1917. ...... Q. What way do you usually shovel? A. Shovel every time with right hand. Q. When you felt this pain in your back, what way did you shovel? A. Shovel with left hand. Q. What was the reason you shoveled with your left hand? A. Because I don't want to hit my buddy with shovel—I was standing too close. ...... Q. How long did you shovel with your left hand or left-handed when you felt this pain in the back? A. In the morning until twelve. ...... Q. That morning did you start to shovel right-handed or left-handed? A. Right-handed when I get a chance."

During the three hours referred to claimant and his "buddy" had loaded three cars. Larry Bossi, claimant's "buddy," thus described the manner in which they were

working that morning: "Q. Now, when you were working on the third car, did anything happen to Angelo? A. I worked in the front and he worked in the back—it was too tight to work for two men. Q. You were squeezed together? A. No—it was too close to work and you got cramped like. Q. And did you notice how Angelo shoveled, which hand? A. He was shoveling up and he told me he got hurt. Q. How far away from him were you? A. Indicating about six feet—I stayed close to the rib and he stayed close to the car. Q. What did Angelo say? A. He said he got hurt, no can work no more. Q. Did he keep on working or did he drop his shovel? A. I said, you go sit down and he said can't work no more. About one hour he try again and he no can do it and he quit. ...... Q. And they took him out of the mine? A. Yes. Q. When he said he got hurt, did he drop his shovel? A. Sure he dropped his shovel. Q. Did he fall down? A. Sure he fall down."

Claimant's medical witness, Dr. J. W. Boice, testified he examined him on March 29 and September 9, 1936, and took X-rays. Excerpts from his testimony read: "Q. What does your examination and X-ray show to be his injury? A. The X-rays—I might incidentally say there that he had an old injury back in 1918 to the back, and the X-ray showed an old fracture of the tip of the first lumbar transverse process on the left, with lipping and fusion of all the lumbar. There was a torsion of the second, the third, and the fourth lumbar on the left toward the right. There was impingement of nerve tracts of the third, fourth, and fifth on the left. There was lordosis to the right, with apparent pressure on the left side of the cord, separation in the left sacro-iliac which was more marked than on the right, an old injury to the fifth lumbar and the first sacral, which looks as though it might have been an old crush. There was displacement of all the spinal processes of the lumbar region. The whole spine shows evidences of chronic arthritis. It is especially marked in the lumbar from

the second down, and involving the sacrum. ...... Q. Doctor, did you see any X-ray pictures of this previous injury that you mentioned. A. No, sir. Q. And did you get a history of how long he was disabled or what the extent of his injury was as to that previous accident? A. I understood that in that previous accident that he was hurt in 1918 and that he was off work for about four years, and that the injury was to the—I understood the lower back. What I mean by the lower back is from the lumbar region down. ...... Q. I presume, therefore, doctor, that these old fractures that you described are attributable to that old accident? A. Yes, I would say that the fractures are all attributable to the old injury. Every one of them."

The first question of law arising out of this review of the evidence by and on behalf of claimant is whether it supports a finding that claimant met with any "accident" during the forenoon in question.

Certain factors frequently present in compensation cases may be promptly eliminated. There is no evidence on this record of any slipping, falling, or the like, or of the happening of any undesigned, unexpected or fortuitous, external event, or of any overexertion.

Again, it is not sufficient to stop with showing that during his work claimant was stricken with a severe pain in his back which "went down" his left leg and rendered him unable to continue the loading of the car. There must be competent proof that this condition resulted from an accident: *Adamchick v. Wyoming Collieries Co.*, 332 Pa. 401, 3 A. 2d 377.

Many of the so-called findings of fact of the referee, adopted by the board, are not findings at all, but merely recitals of portions of the testimony. The only specific finding is that claimant has been totally disabled since March 11, 1936. The theory upon which the award was based is that this disability was the "result of an accident sustained on that day, which aggravated a pre-existing osteo-arthritis." The only thing which the board

suggested as having happened outside of the usual course of events was that claimant had shoveled left-handed during a part of the three-hour period he worked that day. There was competent evidence supporting the finding of total disability and that matter may be dismissed. In support of their conclusion that claimant suffered a compensable accident, the board and court below cite and rely upon *Reffner v. Consolidation Coal Co.,* 121 Pa. Superior Ct. 11, 182 A. 762, hereinafter discussed.

In *Crispin v. Leedom and Worrall Company,* 142 Pa. Superior Ct. 1, 15 A. 2d 549, we endeavored to classify the compensation cases in which a preexisting ailment or abnormal physical condition was a factor.

The absence from this record of any evidence of over-exertion or of any external accident removes the case at bar from the second and third classifications therein made. If the present case falls within any of the four general classifications arranged in the Crispin case it is the fourth—cases held to be compensable upon the ground that sudden and undesigned *internal* violence may be so inflicted upon the physical structure of an employee by a *twist, sprain,* or the like, even when performing labor in the usual way, as to amount to an accident within the meaning of the statute. In some of the cases included within this class no preexisting ailment was shown; in others arthritis, etc., was present. The case at bar is distinguishable from the Crispin case itself by the fact that Crispin did not have a serious and rapidly progressing preexisting ailment, but merely an arteriosclerotic type of heart affection, due to ordinary "wear and tear." Cases there cited which bear some resemblance to the present one are *Hamilton v. Pennsylvania Railroad,* 298 Pa. 22, 147 A. 837; and *Reffner v. Consolidation Coal Co.,* supra, where a sudden *twist* in picking up a mine prop aggravated a preexisting back ailment caused by a previous injury. In the Hamilton case a preexisting arthritic condition was

aggravated by a *sprain*. In each of these cases, and in all the other cases of this nature held to be compensable, there was distinct evidence that the disability resulted from a twist or sprain, rather than from the progress of the preexisting condition. Here there is no evidence of any twist or sprain, nor did the referee make any such finding.

The only departure from claimant's ordinary routine of labor suggested as a basis for an inference of accident is that, by reason of the somewhat cramped quarters in which he was working, it was necessary for him occasionally to shovel left-handed. It need only be remarked that while an accident is necessarily something unusual, it does not follow that every unusual occurrence, or deviation from the usual manner of performing work, amounts to an accident. Cf. *Parks v. Miller Printing Machine Co.*, 336 Pa. 455, 9 A. 2d 742; and *Dolinar v. Pittsburgh Terminal Coal Corp.*, 140 Pa. Superior Ct. 543, 14 A. 2d 871.

It is clear from the evidence submitted by claimant that his disability may possibly be due either to the manner in which he worked upon the day in question, or to the normal progress of his osteo-arthritis, coupled with the deformities resulting from the old fractures.

In such case, the burden is on the claimant to show that some accident in the course of his employment actually caused his disability. That burden is not met by testimony of such a nature as to render any inference drawn therefrom a mere guess or conjecture. See *Monahan v. Seeds & Durham et al.*, 336 Pa. 67, 6 A. 2d 889, and the cases collected in the footnote to the first classification in the Crispin case.

When we turn to the testimony by which claimant endeavored to carry this burden, we find this situation. His medical witness, Dr. Boice, testified upon this controlling issue as follows: "Q. Then, his present condition, in your opinion, is due to the injury he received upon March 11, 1936? A. An aggravation of a preexist-

ing condition, *plus a twisting—a twist of the spine* which *probably* occurred in the last accident." (Italics supplied)

Clearly, this statement is not the kind of unequivocal medical testimony required to support an award: *Elonis v. Lytle Coal Co.*, 134 Pa. Superior Ct. 264, 3 A. 2d 995; *Beck v. Franklin Glass Corporation et al.*, 136 Pa. Superior Ct. 204, 7 A. 2d 600; and *Monahan v. Seeds & Durham et al.*, supra. Moreover, the witness assumes a fact concerning which there is neither evidence nor a specific finding, viz., that either at the time of claimant's former injury, or on March 11, 1936, he *twisted* his spine, and then hazards the guess that it *probably* occurred on the later date. Cf. *Nolker v. Ford Collieries Company*, 142 Pa. Superior Ct. 18, 15 A. 2d 557, (opinion this day filed).

Dr. James P. Kerr, called by the appellant, examined claimant on April 18, 1936, and also saw the X-rays taken by Dr. Boice. Excerpts from his testimony read: "Q. Any evidence of arthritis along that spine, doctor? A. Yes. His spine is—vertebral spaces are almost entirely filled up from the arthritic condition. The displacement of the vertebrae, in my professional opinion, could not have been effected by any injury that he alleged to have had recently. I think the condition of his vertebrae is due to his previous injury, the history of which he gave me, about—I don't remember the date—some years before. Q. Doctor, from the history he gave you of shoveling coal in the car, as you stated, in a cramped or close-up position, would that in itself have been sufficient to have caused the displacement of the vertebrae as shown by these pictures? A. I don't think so. It would take a pretty severe injury to have displaced the vertebrae as they appear on the picture, particularly with his arthritic condition of the spine." On cross-examination: "Q. If Angelo Ferraro, the claimant, had been in the condition as shown by that X-ray in 1918, he could not have done any work since 1918?

A. Yes, he may have, because he is—his arthritic condition has been progressing all this time. Possibly at the time he was injured in 1918 he didn't have any arthritic condition. ...... By the referee: Q. Doctor, in your opinion, what is the chief cause of disability at the present time? A. Oh, just arthritis and a deformed spine."

Under this state of the medical testimony, the referee appointed Dr. W. O. Markell, specializing in orthopedic surgery, as an impartial expert to examine claimant, make X-ray pictures, and read all the testimony and records. When called to testify, the witness stated claimant was totally disabled at the time he examined him. In describing his then condition, the witness testified: "This man has a very marked osteo-arthritis in the lumbar spine and there is also a marked deformity in the lower lumbar spine and sacrum; as he did not have a severe injury the arthritis must have softened the bones before his first sprain in 1918 and the softened bones gave way at this time; his record from the Mercy Hospital mentioned the inability to dorsiflex the left foot so that this partial paralysis must have occurred at that time; in looking at the severity of the arthritis and the deformity in the low back, it is surprising to me that he has been able to return to heavy work since his first injury in 1918, but he tells me he had been loading coal over a year previous to March 11, 1936. His present disability is apparently an exacerbation of the arthritis in the low back due to the use of it in an irregular manner, namely, shoveling left-handed. With rest the present exacerbation should quiet down in a reasonable time returning him to his previous status, which is far from normal and which is the end result of his first injury plus the severe osteo-arthritis. ...... Q. And was that disability due to the accident of March 11, 1936? A. You could hardly say that, because he was able to return to heavy work following March 11, 1936. No, sir, I

don't feel it is due to that. He really did not have an injury from the history he gave me; his back gave way under the strain he was working."

In amplification of his statement that claimant "did not have an injury" in 1936, the witness said: "There was not any heavy strain or anything like that, it was just a question of using the back." By way of illustration of what he meant by "exacerbation" or "aggravation" of the arthritis Dr. Markell remarked: "To me it is not much different than a baseball pitcher when he goes out in the spring. The first time he throws a baseball his arm gets sore, because he is doing work with muscles that are not accustomed to doing that but that gets better as he keeps on pitching, and with this man if he uses his back a little different than usual he stirs up this arthritic condition."

A majority of the members of this court are of opinion that the strongest possible inference in favor of the claimant which can be drawn from any evidence upon this record is that his disability may have been somewhat hastened, but not caused, by the manner in which he worked on March 11, 1936. Such a finding would not justify an award: *Gausman v. R. T. Pearson Co.*, 284 Pa. 348, 131 A. 247; *Pelusi v. Mandes et al.*, 109 Pa. Superior Ct. 439, 167 A. 456. As we view this case, no useful purpose would be served by returning it to the board for more specific findings. The material facts are not in dispute and cannot be changed. When the established principles of law are properly applied to them the conclusion seems unavoidable that claimant's unfortunate disability is attributable to the deformity caused by his prior injury plus the natural and crippling progress of his osteo-arthritis.

As we find no competent evidence upon this record which would support findings justifying an award of compensation, the assignment of error to the judgment entered upon the award must be sustained.

Judgment reversed and here entered for appellant.