## McFeeley *v.* Brownsville School District (et al., Appellant).

Argued April 15, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*John M. Reed,* with him *Higbee, Lewellyn & Higbee,* for appellant.

*Francis A. Dunn,* with him *E. J. McDaniel,* for appellee.

OPINION BY DITHRICH, J., July 19, 1946:

Claimant's decedent died as a result of a heart attack following his participation in a basketball game. The compensation authorities awarded his widow compensation; on appeal to the court of common pleas of Fayette County the award was affirmed by a divided court and from that judgment the defendant and its insurance carrier bring this appeal.

The facts, which are not in controversy, are substantially as follows. Gerald McFeeley, aged 33, was, in September 1942, employed as physical instructor in charge of all physical education in the Brownsville Junior High School. His duties included the training and coaching of the basketball team. It had been the custom of the school ever since its establishment to wind up the basketball season with an exhibition game between the varsity and the faculty. Following the usual custom, the game was scheduled for the afternoon of May 13, 1943, and McFeeley, as head of the physical education department, was placed in charge of the game. He selected the teams, placing himself as a forward on the faculty team and played throughout the first and second quarters of the game and part of the third and final quarters, playing in all, about three-quarters of the time, and was in the game at the finish. The game was fast and, as described by one of the varsity players, "fairly rough during the first half," but at the end of the half the varsity was so far ahead that the teachers "slacked-off" for the remainder of the game. Aside from being fast and fairly rough during the first half, the game was not marked by any untoward incident. It was "as fair as could be."

When it was over, McFeeley went first to his dressing room and was later found alone in the shower room lying on a wooden rack still in his gym clothes. He complained of not feeling well. A physician was called and after resting for a time he walked to his home a short distance away, arriving there about 5:15 p.m. The game was over about 4:00 p.m. He immediately went to bed, but his wife becoming alarmed at his condition summoned another physician, Dr. W. S. Huston. He arrived at 6:00 p.m., but by that time McFeeley either was dead or died within a few minutes. Dr. Huston ascribed his death to acute dilatation of the heart caused by the strain placed upon it by his participation in the basketball game.

Upon examination by the same physician in October 1942, decedent had been found to be suffering from an "enlarged heart and a valvular heart lesion with a definite systolic murmur" resulting from rheumatic fever in his childhood. On May 12, the day before the basketball game, McFeeley took his son to Dr. Huston's office to be treated for some minor ailment, and in the course of the visit he told the doctor that he expected to take a job on a river boat during the summer and that he would be back later for a "check-up" on his heart, to determine whether or not the work would be too strenuous for him.

The compensation authorities and the majority of the court below held that decedent's death was the result of an accident in the course of his employment. With that conclusion we cannot agree. We fail to find anything in this case to distinguish it from a recent line of cases wherein ". . . there has been evolved the well-established legal principle that an injury is not compensable if it amounts only to the increase of a pre-existing disability which occurs in the course of the employe's usual labors and without any accident in the ordinary lay understanding of that term. To constitute a compensable 'accident' it must be shown that the work in which he was engaged at the time of the occurrence

was of a different nature and required a materially greater amount of exertion, risk or exposure, than that to which he was ordinarily subjected, so as to justify a conclusion that the increased severity of the work was the cause of, and not merely coincidental with, the aggravation of the previously existing infirmity:" *Rathmell v. Wesleyville Borough*, 351 Pa. 14, 16, 17, 40 A. 2d 28. See also *Good v. Pa. Dept. of Property & Supplies*, 346 Pa. 151, 30 A. 2d 434; *Crispin v. Leedom and Worrall Co.*, 341 Pa. 325, 19 A. 2d 400; *Monahan v. Seeds & Durham*, 336 Pa. 67, 6 A. 2d 889; *Parks v. Miller Printing Machine Co.*, 336 Pa. 455, 9 A. 2d 742.

In the instant case, as aptly pointed out by Judge Carr in his dissenting opinion: "It may be, as the referee and the board have found, that his activity was more strenuous than that to which he was accustomed, but if so, it involved no more exertion than was necessary for the performance of his duties in the expected course of events, and he had every reason to know in advance the extent of the exertion to which he would be subjected." His participation throughout three-fourths of the game was a purely voluntary act on his part. While participation in the game was expected of him, he was not required to play any more than was any other member of the faculty. Furthermore, he could have retired from the game any time he desired to do so. With his known condition and with the advice of his physician that "he would have to live a 'managed' life," how could it reasonably be expected that he could compete in a strenuous game with boys half his own age without the inevitable effect of further weakening his heart or producing a pathological result that would not only not be unnatural or improbable but most likely and probable.

In *Rathmell v. Wesleyville Borough*, supra, where, in contrast with the instant case, the claimant had not known of his affliction, the court nevertheless held, page 17: "Here, it is true, claimant had not known of his

affliction, but, since it admittedly existed, the effect of his exposure, however unexpected by *him,* was, from a medical standpoint, far from unusual, abnormal or extraordinary; indeed, if not inevitable, it was at least extremely likely and reasonably to be anticipated; therefore it was not.an 'accident.' "

In our opinion, this case falls within the first of three general classifications in which a pre-existing weakness or condition becomes an important factor in determining whether compensation should be awarded or disallowed for a death or an injury, to-wit: "(1) Those in which the employee had a preexisting disease which had progressed to the point where the continuation of his normal work was dangerous. Notwithstanding his physical condition, the employee continued at work until stricken while performing his usual work in the usual way and without the happening of any unexpected external occurrence:" *Royko v. Logan Coal Co.,* 146 Pa. Superior Ct. 449, 458, 22 A. 2d 434. In determining whether an act is unusual, "The criterion is not whether the act causing the injury was unusual generally speaking, but whether it was unusual and untoward in the course of the employment in which the employee was engaged:" *Weissman v. Phila. Electric Co.,* 111 Pa. Superior Ct. 353, 170 A. 318. The guiding principle for the disposition of cases such as this one is well stated in *Royko v. Logan Coal Co.,* supra, p. 451: "Death or disability from a natural cause overtaking an employee while engaged in his accustomed work in the usual manner cannot be considered as accidental, though hastened by his work."

The judgment is reversed and here entered for defendants.

HIRT, J., concurs in the result but only on the ground that decedent's activity was wholly voluntary and outside the course of his employment.

Ross, J., dissents.