Schubert *v.* Oswald & Hess Company, Appellant.

Argued April 15, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*John A. Robb,* with him *Rahauser, Van der Voort, Royston & Robb,* for appellant.

*James J. Lawler,* with him *Prichard, Lawler, Malone & Geltz,* for appellee.

OPINION BY RENO, J., July 17, 1947:

The authorities found for claimant and awarded workmen's compensation. His employer appealed to the Court of Common Pleas of Allegheny County, and that tribunal remanded the record to the board for the purpose of taking additional testimony. After a second hearing, another referee, again sustained by the board, found for claimant. Appellant then appealed to the County Court of Allegheny County,[1] and upon affirmance of the award by that court, this appeal was taken.

Claimant was suffering from a pre-existing heart ailment, and the question is whether the injury he suffered was the result of an accident which aggravated or accelerated his chronic disability.

There was a decided conflict in the testimony, but the factual issues were determined in claimant's favor,

---

[1] During the interim between the two appeals jurisdiction of appeals from decisions of the Workmen's Compensation Board was transferred from the Court of Common Pleas of Allegheny County to the County Court of Allegheny County by the Act of May 27, 1943, P. L. 691, section 1, 77 PS 872.

and accordingly on appellate review he is entitled to have the evidence viewed in the light most favorable to him and to the full benefit of all reasonable inferences. *Morrison v. Vance,* 157 Pa. Superior Ct. 244, 42 A. 2d 195.

On October 20, 1941, claimant was given a pre-employment physical examination by Dr. R. R. Clark, who was the company doctor and also claimant's family physician. He found claimant suffering from a heart condition, but, considering his previous history of heavy work, he certified him for employment. A week later, on October 28th, with the assistance of his superior, claimant was attempting to tip a steel trough truck for the purpose of emptying 300 gallons of water contained therein. The truck was five feet long, three feet high, weighed 240 pounds when empty, and was set on wheels. The claimant was on one end of the truck and his co-worker on the other, and while claimant was bent over in a stooped position attempting to tilt his end of the truck his left hand slipped and as he stretched he felt a tearing sensation throughout his left side. Claimant had on previous occasions emptied trucks by using a dipper, and this was the first time he had participated in trying to tilt one for that purpose.

Very soon after the incident claimant became sick at his stomach, expectorated considerable blood, and his heart action increased, a condition which continued for 24 hours. He went to his home, was confined to bed for a week, and experienced hemorrhages until they were checked by Dr. Clark.

Based upon that evidence, the second referee found as a fact "that on October 28, 1941 the claimant, while in the course of his employment, was attempting to tip a metal truck containing approximately 300 gallons of water and while so doing over-exerted himself and aggravated a pre-existing heart condition, from which the claimant was totally disabled from October 29, 1941 to

November 15, 1941, on which latter date the claimant's disability changed from one of total to one of partial reflecting a 50% loss in earning power, which will continue for an indefinite period of time in the future."

Except for his physical condition, the evidence would readily support the conclusion that claimant's disability resulted from an accident, as that term is employed in workmen's compensation law. But where there is a preexisting physical ailment, a claimant carries the burden of showing "that the work in which he was engaged at the time of the occurrence was of a different nature and required a materially greater amount of exertion, risk or exposure, than that to which he was ordinarily subjected, so as to justify a conclusion that the increased severity of the work was the cause of, and not merely coincidental with, the aggravation of the previously existing infirmity": *Rathmell v. Wesleyville Borough,* 351 Pa. 14, 16, 40 A. 2d 28.

There was certainly more than a slight deviation from "the normal or ordinary routine of labor," as in *Good v. Pa. Dept. of Property and Supplies,* 346 Pa. 151, 30 A. 2d 434, and *Rathmell v. Wesleyville Borough,* supra, p. 17. Claimant was not "performing an act in which he had engaged on numerous other occasions," as in *Crispin v. Leedom & Worrall Co.,* 341 Pa. 325, 329, 19 A. 2d 400. And, differing from *Adamchick v. Wyoming Valley Collieries Co.,* 332 Pa. 401, 3 A. 2d 377, there was proof that the disability followed the act of stooping and stretching. (For an explanation of the significance of the *Adamchick* case, see *Buck v. Arndt,* 153 Pa. Superior Ct. 632, 34 A. 2d 823). These cases, upon which appellant relies, do not control this factual situation. Here claimant was engaged in a task that he had performed before but in a different manner, and the attempt to tilt the truck instead of dipping the water from it was a decided deviation from his ordinary routine. At the moment when his hand slipped he undoubtedly over-exerted himself, that is, he put forth un-

usual strength and exertion. *Royko v. Logan Coal Co.,* 146 Pa. Superior Ct. 449, 22 A. 2d 434.

Nevertheless, the question still persists whether the evidence justifies the conclusion that the increased severity was the cause of, and not merely coincidental with, the aggravation of the previously existing infirmity. For the answer to that problem we turn to the medical testimony. For, in cases where a pre-existing ailment is a factor the claimant must establish causal connection between the injury and the accident by competent and unequivocal medical testimony. *Urbany v. Frick Coke Co.,* 140 Pa. Superior Ct. 534, 13 A. 2d 905.

Two physicians testified. Dr. Clark, to whom reference has been made, was called by the claimant. Dr. L. M. Nelson, a cardiologist, who examined claimant after the injury, was the defendant's witness.

At the first referee's hearing, Dr. Clark testified that claimant had "an old heart lesion mitral disease, mitral-stenosis", and that after the heavy lifting, "one of the little blood vessels somewhere in the pulmonary tract let go and caused the bleeding." In response to a hypothetical question which included the facts of the incident and propounded the question, ". . . was this heart condition aggravated by this lifting at this time?" he answered: "Yes, I would think it was, *if he had no bleeding before that. Apparently he did not."* (Emphasis added). Upon cross-examination he testified: "A. *He told me he had a slight bloody expectoration and cough starting three days ago,* which would be about the twenty-eighth but he didn't have any gross hemorrhage like he had on the night that he worked last. Q. This bleeding of course, even though slight three days off, would accelerate cough would it not? A. Yes, that was due to back-pressure in his lung and that would increase his cough. Q. In other words, the back-pressure in his lung due to mitral condition was—already occurred prior to October 28th?

A. Yes." (Emphasis added). Because this language appeared to be contradictory, the Court of Common Pleas, holding that Dr. Clark "ought to be given an opportunity to clarify it", remanded the case "for the taking of further testimony and reconsideration of the case."

Dr. Clark was the only witness called at the second hearing. He testified, in response to the referee's question: "Q. Doctor, what is your professional opinion as to the relationship of this lifting on this particular day to the occurrence that—as to his disability afterwards? A. Well, I think it caused it. Q. What caused it? A. Well, his lifting as he testified." The slight bloody expectoration that claimant had before the accident did not, in his opinion, cause the subsequent disability, and that it was caused by the lifting. The contradiction in his prior testimony was satisfactorily explained in an answer too lengthy for verbatim quotation. Its purport was that in mitralstenosis, spitting of blood, hemopytsis, is a usual symptom, and the expectoration of small amounts quite common. But spitting in large amounts is uncommon, and claimant's repeated expectoration in large quantities was caused by the heavy lifting. President Judge LENCHER properly said in his opinion: "At any rate there is no basic wavering in Dr. Clark's opinion . . . that the accidental injury and overstraining because of the unusual character of the work and the slipping of the hand was the causative factor responsible for the claimant's disability." Taking Dr. Clark's testimony as a whole it supports the finding that claimant's disability was caused by the lifting. His expression, "I think" is equivalent to "I believe", and amounts to an assertion of his professional opinion. *Jones v. Phila. & Reading C. & I. Co.*, 285 Pa. 317, 132 A. 122.

But should Dr. Clark's testimony be eliminated for any reason, the testimony of *defendant's* expert, Dr. Nelson, would supply a firm predicate for the finding of

the board. Upon cross-examination, in response to a hypothetical question containing all the pertinent facts, and inquiring ". . . would you say that this lifting aggravated that heart condition that you found there?" he answered, "Yes, I would say so." His answer amounted to the expression of a professional opinion. *Johnston v. Payne-Yost Construction Co.,* 292 Pa. 509, 141 A. 481.

In many respects this case resembles *Balaban v. Severe,* 157 Pa. Superior Ct. 463, 43 A. 2d 543, (allocatur denied, Id. xxiv), and is governed by its principles and the authorities there cited. Our careful review has led us to the conclusion that there was sufficient legal and competent evidence to support the findings of the compensation authorities that the claimant's disability resulted from an aggravation of an existing disease caused by an accident in the course of his employment.

Judgment affirmed.