Elonis *v.* Lytle Coal Company, Appellant.

Argued December 14, 1938.

Before KELLER, P. J., CUNNINGHAM, BALD-RIDGE, STADTFELD, PARKER and RHODES, JJ.

*Henry A. Gordon,* with him *T. G. Wadzinski,* for appellant.

*Roger J. Dever,* for appellee.

OPINION BY CUNNINGHAM, J., January 31, 1939:

We are satisfied, upon a review of the record in this appeal by the employer from a judgment entered upon an award of compensation for total disability, beginning January 22, 1937, that the only question properly here involved is one of law, viz., whether the claimant produced evidence legally competent to sustain the ultimate finding of the referee, adopted by the board, that an infection and degeneration of his right kidney, necessitating its removal, was caused by a blow in his right lumbar region from a falling lump of coal.

The following findings of fact by the referee are sustained by competent evidence: "On or about November 25, 1936, the claimant, while in the course of his employment for the defendant company, was [accidentally] struck towards the right side of the back by a lump of coal. Upon examination this area was found to be about the size of a hand and was red and [had] some scratches. Previous to the time of this untoward happening the claimant was apparently in good health. Subsequent thereto he started to complain of pain in this region and was unable to [lift] without experienc-

ing severe pain. However, he continued in his employment up until and including January 14, 1937, when he ceased his work for the defendant company. Notice of this untoward happening was given to the defendant company within the statutory period. On June 17, 1937, the claimant was operated upon at the Pottsville Hospital for an infected kidney, which was removed. The claimant is still totally disabled."

We, accordingly, lay aside, for the purposes of this appeal, the evidence of the company doctor to the effect that when Elonis, the claimant, was sent to him on November 27, 1936, he told him he "got bumped on the side of the chest"; that a careful examination failed to reveal any evidence of an injury; and that claimant was therefore given a "clearance card" to return to work.

Before taking up the expert medical testimony adduced in behalf of claimant, it should be noted that neither the board nor the court below relied solely upon that testimony. The board, after citing *Fink v. Sheldon Axle and Spring Co.*, 270 Pa. 476, 113 A. 666; *McCrosson v. Phila. Rapid Transit Co.*, 283 Pa. 492, 129 A. 568; *Jones v. P. & R. C. & I. Co.*, 285 Pa. 317, 132 A. 122; and *Johnston v. Payne-Yost Construction Co.*, 292 Pa. 509, 141 A. 481, but overlooking *Vorbnoff v. Mesta Machine Co. et al.*, 286 Pa. 199, 206, 133 A. 256, (all again cited and considered herein), said the testimony *"possibly* satisfied the ...... tests of the Supreme Court." The common pleas said: "If there were no evidence other than the medical testimony it is doubtful whether in this case it would be sufficient."

Each of these tribunals, citing such cases as *Mohr v. Desimone & Sayers,* 110 Pa. Superior Ct. 44, 167 A. 504; *De Beaumont v. Brown et al.,* 104 Pa. Superior Ct. 158, 158 A. 643; and *Hanlon v. Gulf Refining Co. et al.,* 115 Pa. Superior Ct. 315, 175 A. 724, held that the lay testimony in the present case indicated the hopelessly diseased condition of claimant's kidney followed so immediately, directly and naturally after the accident that

medical testimony was not necessary. In other words, their position was that a layman could determine, from the circumstances of the accident and without the aid of the opinion of any medical expert, that the blow caused the condition of the kidney disclosed at the operation.

We cannot agree with these views. The cases cited are distinguishable upon their facts. In the Mohr case the claimant had been working for nine months at his regular work but was unable to do anything from the day of the accident. In the De Beaumont case an existing ailment was immediately aggravated by the accident.

The Hanlon case was a border-line one, but there was direct evidence of an accidental injury to the affected knee. Here, the claimant worked nearly two months at his regular employment after the accident. There is nothing in the lay testimony which tends to indicate definitely that his disability was not due to the natural and normal progress of a kidney disease.

In the Mohr case, we said (p. 49) : "Where there is a serious question whether the disability is the result of an accident, unequivocal medical testimony is necessary." In our opinion, the case at bar is one in which such testimony is clearly necessary to sustain an award.

Drs. B. C. Blaine and H. C. Wallace were the operating surgeons. The former testified claimant, when admitted to the hospital, was suffering with "hydronephrosis and pyonephrosis" of his right kidney. His description of these conditions follows: "We will take hydronephrosis, that is a damming up of the urine in the pelvis of the kidney and in the ureter and the distention of the pelvis and ureter and kidney itself. This man had a definite diagnosis of pyonephrosis associated with hydronephrosis; pyonephrosis means there is some infection of some sort, pyo means or indicating pus, and pus, referring to this particular case, certainly was generated by infection of some sort. This

man had a kidney greatly enlarged and filled with pus, probably there was easily a pint of pus in that kidney when it was removed; ......"

Upon direct examination as to any causal connection between the accident and the condition of claimant's kidney, the doctor testified: "Q. If that testimony (summarized in a hypothetical question) is correct, in your opinion whether or not that blow caused the requirement of removing this kidney? A. If this accident didn't cause it I don't know what else did. Q. Did you eliminate all other causes but the accident? A. I know of nothing in the case or in the physical examination. Q. Under those state of facts, is it your opinion the accident did cause it? A. *I couldn't see it that way.* Q. What is your opinion? A. I can say I know of nothing else would cause it. Q. Could a blow of this kind cause it? A. *It could.*" (Italics supplied)

An excerpt from his cross-examination reads: "Q. What can bring that [kidney condition] about? A. Stricture of the ureter at the junction of the bladder; kinking of the ureter in its course from the bladder to the pelvis, kinking or obstruction of the ureter at the pelvic junction or clot of blood which might obstruct the upper portion of the pelvis of the kidney. Q. Did this injury to this man bring about any of those causes? A. Well. Q. Did it or did it not? A. *I can't say exactly.* Q. Was there any evidence of injury to the kidney? A. When I finally saw the kidney it was just a bag, it would be impossible to say that. Q. You cannot tell today whether there was any injury to the kidney from the blow this man received or whatever he did receive on the day alleged? A. *I cannot.* (By counsel for claimant) : Q. Did you find any other cause for it except the blow? A. No, I did not." (Italics supplied)

When Dr. Wallace was on the stand, counsel for claimant ended a hypothetical question which included all the material lay evidence, with the inquiry:

"Whether or not in your opinion this man's kidney condition was caused by that blow?" The reply of the witness was: "Could have been." His testimony continued: "Q. Did you find any other cause for it? A. No. Q. What is your best professional opinion whether or not it was? A. I didn't see him until March. Q. Taking the history? A. I would say it *could* be a determining factor." (Italics supplied)

Upon cross-examination, the witness described the conditions found at the operation, including the "kinking of the ureter." The examination proceeded: "Q. Was this injury severe enough in your judgment to have caused such damage to the kidney? A. *That is possible.* I found in the operation the kidney was not in its normal position. Q. Do you know why it was not in normal position? A. I do not. Q. Would it be unusual to find the kidney where you found it? A. No, sir, maybe in your belly. Q. Now, to cause such damage to the kidney would it not have to be a blow of great severity? A. No, not necessarily so. ...... Q. Now, doctor, if the man had received a blow sufficient to have damaged the kidney to bring on the chain of evidence which you say follows, would he have been disabled to any extent? A. He could have his kidney dislodged, that is one theory about it. Dislodging is a slow process and he would not know he had any damage to the kidney at all, but the kidney itself was dislodged and caused this kinking of the ureter; I am giving that as a *theory,* not as a cause. Q. I want to know in this particular case, we want it in this particular case? A. That is impossible for me to answer after those months. Q. With that statement you have made very frankly to us now, can you say now and do you say now that the blow which this man received in his back on November 25, 1936, bearing in mind he worked from then until January 14, 1937, do you say now doctor that that blow or that injury did result in the infected kidney that you removed? A. I say it *could* have. Q. Is that

as far as you will go? A. That is as far as I will go. (By counsel for claimant) : Q. Did you find any other cause but the bump for this condition, doctor? A. No." (Italics supplied)

We have quoted at length such opinions as were expressed by claimant's medical experts because, as indicated, the case must stand or fall upon their testimony. The lack of certainty so clearly apparent in their evidence demonstrates the soundness of our position that no layman could arrive at a conclusion of causal connection in this case with sufficient certainty to sustain an award.

When the testimony of claimant's experts is given the most favorable construction possible in his behalf, it amounts to no more than an expression of their professional opinion that the blow could have, and most probably did, cause the disabling infection and destruction of his kidney. As we understand the argument of counsel for claimant that is the extent of his contention. Pursuant to leave granted at the oral argument, he has cited to us the case of *Grobuskie v. Shipman Koal Co.*, 80 Pa. Superior Ct. 349, 351, decided March 2, 1923. There, as here, there was medical testimony that the cancer in question "could come from the injury" and the doctor said "he knew of no other cause." We held that this testimony, although negative in character, came within the rule laid down in *Fink v. Sheldon Axle & Spring Co.*, 270 Pa. 476, 113 A. 666.

There was a period of time between May 9, 1921, and April 12, 1926, during which a statement by an expert that in his opinion a given result "most probably" came from an assigned cause would, under the rulings of our Supreme Court, support a finding of causal connection. That ruling was made in *Fink v. Sheldon Axle & Spring Co.*, supra, decided May 9, 1921, but was modified and explained in *McCrosson v. Phila. Rapid Transit Co.*, 283 Pa. 492, 129 A. 568, decided May 25, 1925, and definitely changed in *Vorbnoff v. Mesta Ma-*

*chine Co. et al.,* 286 Pa. 199, 206, 133 A. 256, decided April 12, 1926. Naturally, a number of cases will be found in both appellate courts in which the Fink case was followed, but it is no longer the law. The rule as laid down in the Vorbnoff case (page 206) is, "...... the expert would have to state plainly the professional view that the accident had materially 'contributed' (*Farran v. Curtis,* 276 Pa. 553, 556; see also *Clark v. Lehigh V. C. Co.,* 264 Pa. 529, 533) to the ailments from which claimant suffers, in the sense of being, if not the sole cause, then, at least, the 'superinducing cause' thereof: *Jones v. Phila. & Reading C. & I. Co.,* 285 Pa. 317, 320. That is to say, the witness would have to testify, not that the condition of claimant *might have,* or *even probably did,* come from the accident, but that 'in his professional opinion the result in question *came* from the cause alleged'; for, according to our latest pronouncement on this subject, a less direct expression of opinion would fall below the required standard of proof, and therefore would not constitute legally competent evidence." (Italics supplied)

In this connection it should also be stated that it is not absolutely essential that the expert should say "it is my professional opinion" etc. In *Jones v. Phila. and Reading C. & I. Co.,* 285 Pa. 317, 319, 132 A. 122, our Supreme Court said: "The conclusion of an expert, given as, 'I think,' is equivalent to saying, 'I believe,' and amounts to an assertion of his professional opinion, ......" See also *Johnston v. Payne-Yost Construction Co. et al.,* 292 Pa. 509, 515, 141 A. 481.

As the judgment here appealed from must be reversed, its form is not material; but it was not entered in accordance with the rulings of this court in *Graham v. Hillman Coal & Coke Co.,* 122 Pa. Superior Ct. 579, 186 A. 400, and *Gardner v. Pressed Steel Car Co. et al.,* 122 Pa. Superior Ct. 592, 186 A. 410.

Judgment reversed and here entered for appellant.