Rosenberger, Appellant, *v.* Mar-Bern Coal Company et al.

Argued December 9, 1942.

Before KELLER, P. J., BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*John W. Kephart, Jr.,* with him *Edward I. Cutler, Isadore Krasno* and *P. B. Roads,* for appellant.

*B. D. Troutman,* for appellee.

OPINION BY KELLER, P. J., January 28, 1943:

This is a workmen's compensation case. The uncontradicted testimony in the record is to the effect that claimant's husband, George Rosenberger, was employed by the defendant, Mar-Bern Coal Company, as a miner. He was, at the time of the occurrence hereinafter referred to, fifty-two years old and in apparent good health—a man of "unusual strength". On December 31, 1937, while he was working in the mine with a fellow employee, Frank O'Neill, with a trip of five cars, one of the cars went off the track. In an effort to put the car back on the track each employee "grabbed" a "lagging" or piece of wood or lumber, five or six feet long, to use as a lever in lifting the car back onto the rails. When the car had been raised almost as high as the track, and while Rosenberger's "lagging" was against his body, the car slipped and struck the "lagging", bumping Rosenberger on the right side of his chest, and knocking the breath out of him, causing him to wheeze or puff, and say he thought he was hurt. After he got his wind, he worked for the rest of the day, but complained of pain in his side all that day. December 31 was Friday. On Monday, January 3, he went to see Dr. Robert M. Biddle, whose competency as a surgeon is admitted by the appellees, and told him of the occurrence on the previous Friday, how he had

been bumped on the chest while at work and that he had pain there and it hurt him to breathe deeply. Dr. Biddle treated him for a fractured rib and strapped him on the right side to immobilize his chest. He saw him again on January 8, when his condition was no better. Rosenberger continued to suffer pain, but kept on working until January 21, when Dr. Biddle ordered him to stay home. On that day he was very short of breath when he came to the doctor's office, and on examining his chest and heart carefully the doctor found he was suffering from acute endocarditis and told the young man with him to tell his wife that he was in very bad shape and should not go to work but should go to bed. Dr. Biddle treated Rosenberger at his home on January 21, 25, 29, February 2 and 11. He died on February 12. In the certificate of death, Dr. Biddle stated that the principal cause of Rosenberger's death and related causes of importance were: *Fracture of 8th right rib and acute endocarditis;* that a contributing cause of importance was, *Mine accident, which occurred on December 31, 1937, Fracture of 8th right rib.*

On February 11, 1938, the day before his death, an X-ray was taken at Dr. William V. Dzurek's office, which proved negative as to a fracture of the rib, that is, there was no evidence in the X-ray picture of a fracture of the rib *bone;* although Dr. Dzurek stated that if the fracture took place at the junction between the cartilage and the bone, it would not be apparent in the X-ray picture.

Dr. Dzurek on February 11 found no signs of trauma there, no inflammation or swelling. He was of opinion that Rosenberger died from a decompensated heart, or congestive heart failure, and in the absence of evidence of trauma in that region he was of opinion that his death was from the natural progress of the disease and not from trauma, and so testified at the hearing before the referee.

Dr. Biddle testified that, in his opinion, with his knowledge of Rosenberger's apparent good health prior to the injury, the accident was, to a marked degree, a contributory factor to the cause of his death; that the man was in good condition before the accident and after the accident he was not in good condition; that in his belief, the accident caused "something wrong in his chest", which he diagnosed as inflammation of the lining of the heart, or endocarditis; that he could not see anything else but the accident to cause the heart to decompensate. On cross-examination, he said: "When I first went over this man's heart, when he first showed symptoms outside of the fractured rib that there was something else wrong, he had a very acute condition of the heart. Now I can't say whether that condition had existed before the injury or had come on after the injury but *I am certain that the injury would have something to do with the acuteness of it.* Q. It would have to be a severe injury, would it not? A. Not necessarily. Q. Would it not have to be in the region of the affected organ, the heart? A. No, sir. Q. That is to cause endocarditis? A. No., the injury—I don't know whether I can explain it but this injury apparently upset this man. By the Referee: Q. In what way, doctor? A. I think it exaggerated this heart condition that already existed or, perhaps might have existed, and an injury of any type certainly can upset a person, I know from my own experience how it will upset a person." (Italics supplied).

His testimony in other respects, not necessary to be recited, was confirmatory of his certificate of death.

The referee, found, inter alia, that "the untoward happening of December 31, 1937 was a marked contributory factor in causing the death of the decedent which occurred on February 12, 1938", and awarded compensation to the widow claimant.

The defendant appealed to the board which held (1)

that Dr. Biddle's testimony was entirely adequate in quantity and quality to sustain the award; and (2) that the lay evidence that prior to the accident the decedent was a man of unusual strength and subsequent thereto went steadily down hill to the day of his death seemed adequate to sustain the award.

The findings of fact, conclusions of law and award of the referee were affirmed and the appeal was dismissed.

The defendant then appealed to the court of common pleas which held that Dr. Biddle's testimony could not sustain the award. The court took special exception to his testimony above recited: "I think it [the accidental injury] exaggerated this heart condition that already existed or perhaps might have existed", saying: "In other words, the doctor does not know whether Mr. Rosenberger had a heart condition or not on December 31, 1937. If this diseased condition of the heart existed on December 31, 1937, then the alleged injury exaggerated the heart condition but certainly if there was no heart condition on December 31, 1937, and the doctor does not know whether there was or not, then the alleged injury could not exaggerate it or make it more acute. If the doctor is not certain in his testimony, then the Referee cannot base an award upon it."

The court, accordingly, reversed the decision of the board and remitted the record for further hearing and determination.

We are not in accord with this ruling of the lower court, and had claimant taken an appeal to this court we would have reversed the order and directed judgment to be entered on the award. Read as a whole there was nothing indefinite or uncertain in Dr. Biddle's testimony. With his personal knowledge of the decedent for ten years and of the results following the accident he·expressed himself as *certain* that the bump received on December 31, 1937 in the attempt to get the car back on the rails was to a marked degree a con-

tributory factor to his death. Whether the blow caused the endocarditis or aggravated or rendered more acute an existing latent endocarditis, is not important, if it be certain that it did *one or the other*. Unlike many expert medical witnesses, Dr. Biddle did not attempt to testify positively that the decedent had endocarditis on and prior to December 31, 1937, when he received the bump on his chest. He had not examined him on that score before January 21st. But on the latter date, when he did examine his heart and chest, he found a very acute condition of the heart, which in his professional opinion was contributed to in a marked degree by the accidental bump—he could not see anything else to cause it. If so, it was not a vital or determining matter in this proceeding whether the blow brought about the endocarditis, or decompensation of the heart, or whether it aggravated and rendered acute a latent heart condition that had previously given him no trouble. In either event, the claimant was entitled to compensation. See *Brovie v. P. & R. C. & I. Co.*, 89 Pa. Superior Ct. 503; *Farran v. Curtis Pub. Co.*, 276 Pa. 553, 120 A. 544; *Zionek v. Glen Alden Coal Co.*, 105 Pa. Superior Ct. 189, 193, 160 A. 154; *Bakaisa v. P. & W. Va. R. R. Co.*, 149 Pa. Superior Ct. 203, 211, 27 A. 2d 769; *DeBeaumont v. Brown*, 104 Pa. Superior Ct. 158, 161, 162, 158 A. 643.

Dr. Biddle had testified that a blow might cause the heart condition; that it would not necessarily have to be a severe blow, or one that left visible marks on the surface of the body; that in some cases—that is, in the absence of such an injury—it is a slow progressive disease. Dr. Dzurek said nothing in his testimony that would lead one to believe that the endocarditis from which Rosenberger died on February 12, had, in the absence of an injury, developed in the six weeks between December 31, 1937 and February 11, 1938. Because he saw no external evidence of an accidental in-

jury he assumed there had been none and ascribed the death from endocarditis to the natural progress of the disease. But he nowhere intimated that the *disease began after December 31, 1937.* Indeed it is implicit in his testimony that Rosenberger, if he suffered no accident, had a heart condition of long standing. He simply based his assumption that no injury had been sustained on December 31, 1937 because he found no external evidence of it on February 11, 1938.

The claimant was not obliged to appeal then, however; she might, if she saw fit, produce additional testimony in support of her claim, and appeal if the court on considering it was still of the same opinion: *De-Beaumont v. Brown,* supra; *Robertson v. Rieder,* 114 Pa. Superior Ct. 518, 174 A. 604; *Bakaisa v. P. & W. Va. R. R. Co.,* supra. See also *Icenhour v. Freedom Oil Works Co.,* 136 Pa. Superior Ct. 318, 320, 7 A. 2d 152.

At the rehearing before the referee, Dr. Biddle testified for the claimant, and said that it was still his professional opinion that the accident of December 31, 1937 was a contributory cause of Rosenberger's death on February 12, 1938. His testimony, in part, was as follows: "Q. On a former occasion you gave some testimony as to whether or not this man had a prior condition of heart trouble, prior to the accident? A. I believe he did. Q. Do you think he had some trouble with his heart before the accident? A. Yes, sir. Q. This accident aggravated that condition? A. That is my opinion. Q. Could an accident likely cause an endocarditis in itself? A. It could. Since the last testimony was taken we learned that injuries to the chest can cause conditions of the heart, which we did not know before. Q. What is your conclusion today as to what did happen in this case? ...... A. My opinion is the injury aggravated an existing heart condition and resulted in his death. Q. Was it the aggravation

in your opinion that caused his death? A. Yes, sir. By Mr. Troutman [Counsel for defendants] Q. Not that it caused the heart condition? A. No, aggravated an existing condition. Q. You are going on the assumption that he had a heart condition at the time he was lifting the mine car? A. That is my opinion ...... Q. You are only assuming there was some relation between the heart condition and the lifting, you don't know with certainty what his heart condition was at the time he lifted the mine car? A. With the history of the injury and the acute endocarditis coming on I would think that the injury would aggravate the condition which had already been there, it would not come out of the clear sky ...... Q. In your former testimony, doctor, you answered a question by the following answer: Page 31, Notes of Testimony [Record 35a]: 'When I first went over this man's heart, when he first showed symptoms outside of the fractured rib that there was something else wrong, he had a very acute condition of the heart. Now I can't say whether that condition had existed before the injury or had come on after the injury but I am certain that the injury would have something to do with the acuteness of it.' Do you stand on that, doctor? A. As I told Mr. Dever, since the last testimony was taken we have learned in the medical profession that injuries to the chest cause different conditions of the heart that will aggravate conditions of the heart which already exist. This we did not know at the time of the last hearing ...... Q. You said it could aggravate it? A. It could and probably did. Q. Is that your view point of the accident aggravating the existing condition? A. That is my view point. Q. Could or probably did? A. Yes. By Mr. Dever [Counsel for claimant] Q. What is your best professional opinion? A. It did, in my best opinion. By Defendant: Q. Assuming that you are right about the condition of his heart at the time of the injury—A.

(interrupting) He died so quickly I don't think that the heart condition arose, that the acute heart condition could arise without there being something to bring it on."

The gist of his testimony on the second hearing is, that having given further study and consideration to the case and the circumstances attending it, he is of the opinion that at the time of the accident Rosenberger had an existing diseased heart condition, which the accidental injury aggravated and rendered acute, resulting in his death six weeks thereafter.

The defendant produced no further testimony. Dr. Dzurek gave no testimony at any time that, in his opinion, the decedent did not have a diseased heart condition—endocarditis or pericarditis—on and prior to December 31, 1937.

The referee made, inter alia, the following findings of fact and conclusions of law:

### Findings of Fact

"4. On December 31, 1937, the decedent was in the act of placing a mine car which had jumped the track, back in its place, and while engaged in this act was struck on his body in the region of his right chest. He immediately complained of pain in this region and did so for the balance of the day. Prior to December 31, 1937, the decedent was in apparently good health, engaging in various kinds of hard work; immediately thereafter he was in bad health, though he worked at his occupation in the mines ten days, (five shifts or days in the first half of January, 1938, and five shifts or days in the second half of January, 1938), the last he worked being January 21, 1938. Decedent died on February 12, 1938 ......

"7. At the hearing held after remitting the record for further hearing and determination, Dr. Biddle testified the accident was a contributory cause of decedent's death, and that he did have heart trouble before

December 31, 1937, which condition was aggravated by the accident. Further, that an accident (such as decedent had) could in itself cause an endocarditis. He had testified at the first hearing endocarditis was in some cases quite slow in its progression as a disease.

"8. Dr. Dzurek found no signs of trauma, inflammation or swelling or any symptoms of injury on February 11, 1938, the day before decedent's death, and his opinion was that death was due to a decompensated heart from natural causes and not traumatic, but also stated that 'without an accompanying heart pathology in my experience a pleura effusion following trauma would be localized only to the one side where this trauma took place;' and admitted that it is hard to answer whether a blow in the region of the right 8th rib would have to be severe to have any effect upon a diseased heart, and that the severity of the blow should be evaluated by the circumstances.

"9. We find that decedent was suffering from a heart condition (endocarditis or pericarditis) on December 31, 1937, which condition was aggravated by his untoward accident of that date, resulting in his death on February 12, 1938."

### Conclusions of Law

. . . . . .

"2. The accident suffered by decedent on December 31, 1937, having aggravated his then existing heart condition, resulting in his death on February 12, 1938, claimant is entitled to the benefits of the Act."

And the referee awarded compensation.

The defendant appealed to the board from the seventh and ninth findings of fact and the second conclusion of law.

The board, after reciting the action of the court of common pleas on the prior appeal, and stating that the court had found the testimony of Dr. Biddle to be insufficient in law, compared his testimony on the

second hearing with that set forth in the court's opinion, and said: "We believe the additional professional testimony provides little, if anything, more for the record. Both as to the actual existence of the endocarditis or pericarditis at the time of the injury and as to the definiteness of the blow as a causative factor, Dr. Biddle is still positive in one breath and uncertain in the next. He makes an understandable effort to fulfill the legal requirements in behalf of the claimant, but all of his effort is most obviously an attempt to add force to conjecture. We take it from a review of all the testimony that the pre-existing heart condition is still not proved, and from his new testimony that it is merely assumed. There is nothing in the new evidence to establish it as a fact and other evidence previously taken in this case definitely indicates that there was no pre-existing ailment. Lining up the above testimony with the testimony of Dr. Wm. V. Dzurek taken in the first hearing to the effect that an accident such as described could aggravate an existing heart condition, but could not produce one, we must state as our conclusion that the fact of a condition upon which the alleged accident could react has not been proven. There is a long line of cases holding evidence such as that now before us insufficient, one of the most recent being *Elonis v. Lytle Coal Company* (134 Pa. Super. 264)".

It affirmed the first, second, third, fourth, fifth, sixth, seventh and eighth findings of fact and vacated and set aside the ninth finding of fact and second conclusion of law, substituting therefor the following:

"[Finding] Nine: All of the testimony of Dr. Biddle is equivocal and indefinite and we therefore find as a fact that the accident of December 31, 1937, did not aggravate a proven heart condition and therefore was not the cause of death in this case.

"[Conclusion] Second: Since the accident of December 31, 1937, did not aggravate any heart condition

proven to exist at the time thereof and the death in this case was therefore not caused by the accident alleged, the claimant is not entitled to compensation under the provisions of the Workmen's Compensation Act of 1915 as amended."

The evidence in the record does not support the review of the evidence contained in the opinion of the board, nor its ninth finding of fact and second conclusion of law.

On the contrary it leads to the conclusion that unless caused by a blow, endocarditis and pericarditis are slow progressive diseases, and there is not a line in Dr. Dzurek's testimony to support a conclusion that the claimant's husband, on December 31, 1937, when he received the blow on his chest, was not suffering (in a latent or non-acute form) from the heart disease of which he died. On the contrary his testimony that in his opinion Rosenberger's death was due to the *progress* of the disease implies that the disease had been present for some time.

We are satisfied that the discussion and the ninth finding of fact of the board were based on the prior erroneous ruling of the lower court, which held Dr. Biddle's testimony insufficient to sustain an award. The case of *Elonis v. Lytle Coal Co.*, 134 Pa. Superior Ct. 264, 3 A. 2d 995, bears no likeness to this case on its facts and is not applicable authority.

Had the board which passed on the second appeal been the same as that which dismissed the first appeal, we would have no hesitation in reversing the judgment of the court below, which affirmed the order of disallowance of the board, and directing the entry of judgment on the award; for in such case, we would be sure that the sudden reversal of the board in its findings of fact would have been due to its feeling that it was obliged to follow the erroneous ruling of the court on the first appeal.

But the board which passed on the second appeal is a different board from that which made the first decision and award, and we have no disposition to usurp its fact-finding function, except to point out that Dr. Biddle's testimony is not insufficient to support an award—that it is not equivocal, uncertain and indefinite—but is as certain and definite as any physician can be who has not made a prior physical examination and is basing his judgment as to prior conditions from subsequent results—which is what medical experts are frequently called upon to do. See *Baumeister v. Baugh & Sons Co.*, 142 Pa. Superior Ct. 346, 351-354, 16 A. 2d 424. His testimony is positive and definite and amply sufficient to sustain an award. But the board must pass upon it in the first instance. Nevertheless it must do so freed of the erroneous conclusions of the court below, which undoubtedly entered into its prior consideration of the case. We draw attention, however, to the fact that the present board construed Dr. Dzurek's testimony as recognizing that an injury such as Rosenberger was said to have received could aggravate an existing heart condition. He refused to give it effect in this case only because he rejected the evidence of such injury, in view of his finding no external evidence of it six weeks later. But the board, in affirming the referee's fourth finding of fact has definitely found that the accident and resulting injury did occur on December 31, 1937, as testified to by O'Neill and related by the decedent to Dr. Biddle. That must be accepted as a settled fact. Applying that fact to Dr. Dzurek's testimony, and drawing the necessary inferences therefrom, much of the difference of opinion between Dr. Dzurek's testimony, considered as modified by the fourth finding of fact, and Dr. Biddle's testimony on the second hearing would disappear.

The judgment is reversed, and the record is remitted to the court below with directions to return it to the

workmen's compensation board for further consideration and disposition in the light of this opinion, and with authority to receive additional evidence on the subject of the probable length of time the claimant's husband had the heart condition, which ultimately became acute and proved fatal.