Campbell *v.* Oakmont Borough, Appellants.

Argued April 19, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*James J Burns, Jr.,* for appellants.

*Murray J. Jordan,* with him *Fred J. Jordan,* for appellee.

OPINION BY BALDRIGE, P. J., July 19, 1945:

This is an appeal by the Borough of Oakmont and its insurance carrier from the decree of the court below sustaining an award of the Workmen's Compensation Board to the widow of James C. Campbell, who had been employed as a borough policeman. The appellants claim that the evidence was insufficient to show Campbell suffered an accident in the course of his employment, which caused, or contributed to, his death.

On May 26, 1941, between 12:00 and 1:00 A.M. while on duty at the Oakmont police station, Campbell received a call to come to the home of Mrs. Bertha Evanusich and arrest her husband. Shortly thereafter Mrs. Evanusich saw a policeman, whom she could not identify, approach her home with a flashlight. Soon there arose "lots of noise" beneath her bedroom window,

and she heard her husband calling for a gun. About that time Homer A. Machen, a neighbor, in approaching his home noticed a police car standing opposite his driveway and as he drove his car in the yard observed within the range of his headlights a police officer and Evanusich "wrestling all over the ground." In response to the cries of the officer for help he drove to the police station, but found no one there. On his return home the police car passed him, going toward the station house. This witness could not identify Campbell as the officer who made that arrest as he was a stranger to him.

Two other police officers, on duty that night, reported at the station house at 1:00 o'clock and found Campbell sitting on a bench and he appeared "as if he was played out." His necktie was loose, buttons torn from his shirt, one leather puttee off, and his breeches were dirty and torn. He returned home in about a half an hour and when his wife saw his condition she summoned Dr. Charles E. Piper, who arrived about 4 o'clock that morning and upon examining Campbell found that he had contusions on his left shoulder, arm, chest and back, and gave the "impression of a fellow that was just beat up pretty bad."

While no one was able to identify positively the policeman who was wrestling with Evanusich, all the circumstances strongly indicate that it was Campbell. There is ample proof to warrant the finding of an accidental injury within the course of employment. An accident will be inferred from circumstances as well as established by direct evidence: *Hockenberry v. State Workmen's Ins. Fund et al.*, 133 Pa. Superior Ct. 249, 2 A. 2d 536; *Leichleitner v. Coal Township School Dist.*, 147 Pa. Superior Ct. 276, 24 A. 2d 50; *Schrock v. Stonycreek Coal Co. et al.*, 152 Pa. Superior Ct. 599, 33 A. 2d 522.

A police officer's duties include making an arrest, which is, of course, a commonplace occurrence. But

the resistance, struggle, and the physical injury that Campbell experienced was not ordinarily encountered in the course of his employment. The exertion and the unexpected fortuitous and unusual circumstances attending this arrest constituted an accident: *DeEsch v. Emmaus Borough et al.,* 143 Pa. Superior Ct. 225, 18 A. 2d 89.

Aside from the evidence, which points conclusively to an accident, we have also a compensation agreement entered into and approved by the Borough of Oakmont, wherein it expressly recognized that Campbell sustained an accident in the course of his employment on May 26, 1941, and agreed to pay compensation at the maximum rate of $18 per week beginning June 2, 1941. The burden in such circumstances then was on the employer to overcome this prima facie proof of an accident: *Knisely v. Knisely et al.,* 120 Pa. Superior Ct. 140, 182 A. 51; *Rehm v. Union Collieries Company,* 152 Pa. Superior Ct. 461, 33 A. 2d 637. That it failed to do.

A rest at home for a period of about five weeks after the accident did not restore Campbell to his former physical condition. Following the recommendation of Dr. Piper he entered the Veterans' Hospital at Aspinwall. Cardiograms disclosed he was suffering from arterio-sclerosis. Dr. Piper explained that this heart condition was not previously known to him as it had not reached a stage to cause symptoms of cardiac distress. After remaining six weeks at the hospital, Campbell improved sufficiently to return home and take a "desk job." That character of work was assigned to him by the borough. On December 31, 1941, while performing his usual duties at the police station he had a heart attack, which resulted in his death. Dr. Piper, who signed the death certificate, gave the cause of death as "coronary thrombosis due to angina pectoris." This physician testified at the hearing that in his professional opinion the myocardial damage suffered by Campbell as the result of the occurrence on May 26, "was a con-

tributory factor to his death on December 31st." This direct expression of an opinion, notwithstanding there was medical testimony offered upon the part of the appellants that there was no causal connection between the fatal heart attack and the alleged accident of May 26, was sufficient for the compensation authorities to find as a fact that the accident was a contributory cause of Campbell's death: *Elonis v. Lytle Coal Company,* 134 Pa. Superior Ct. 264, 3 A. 2d 995.

Dr. Paul E. Baird, the Medical Officer at the Veterans' Hospital testified that he concluded that the tussle the deceased had in making the arrest on May 26, was the precipitating factor in his coronary occlusion following, and "I wouldn't agree he entirely recovered from it ......"

Prior to May 26, 1941, Campbell was an active officer and apparently in good health, but from that time until his death he was deficient in physical vigor and was required to avoid any exertion. Assuming that he had a preexisting arterio-sclerotic condition, that would not of itself defeat claimant's right to an award, if her husband's death was accelerated by an accidental injury: *Lafferty v. Carbo-Oxygen Company et al.,* 122 Pa. Superior Ct. 425, 185 A. 883; *Euker v. Welsbach Street Lighting Company of America,* 149 Pa. Superior Ct. 78, 25 A. 2d 758.

A careful review of this case leads us to the conclusion that there was sufficient legal and competent evidence to support the findings of the compensation authorities that the deceased died as the result of an accident sustained in the course of his employment.

Judgment of the court below is affirmed.