## Malik *v.* Uniontown, Appellant.

Argued November 14, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and GUNTHER, JJ. (ARNOLD, J., absent).

*James J. Burns, Jr.,* with him *Ray, Coldren & Buck,* for appellants.

*Thomas A. Waggoner, Jr.,* with him *Phillips, Waggoner, Phillips & Board,* for appellee.

OPINION BY RHODES, P. J., January 20, 1953:

The issue in this workmen's compensation case is whether causal connection between the accidental injury and deceased's death was established.

Claimant, widow of the deceased employe, was awarded compensation by the referee. The award was affirmed by the Workmen's Compensation Board. On appeal to the Court of Common Pleas of Fayette County, judgment was entered on the award. The City of Uniontown and its insurance carrier have appealed.

Deceased was a police officer of the City of Uniontown. About 1 a.m. on November 16, 1948, deceased, who was on duty, was struck without warning on the right jaw below the ear by a prisoner. The blow caused him to fall to the floor of the police station, and he was rendered unconscious. Deceased was removed to the hospital where his injury was diagnosed as a mild concussion and a severe contusion of the jaw.

The referee's findings of fact affirmed by the Board were as follows:

"Sixth: The decedent's medical history for the twenty-five or more years of service as a policeman for the City of Uniontown, prior to November 16, 1948, was one of good health and steady employment. After that date and to the time of his death, however, the picture changed to one of gradual and progressive decline in health. From the time of accident until his death the decedent complained to his family of not feeling well, of stiffness in his jaws and face pains; and was observed by his family physician and those with whom he worked as not being in the same state of health as before his accident and instead becoming progressively worse. He presented a picture of gradual and progressive decline in health until his death on October 15 [1], 1949.

"Seventh: The decedent died on October 15 [1], 1949 as a result of myocardial infarction with acute coronary occlusion. We find also that at the time of, and immediately preceding his accident of November

16, 1948, the decedent was suffering from an arteriosclerotic and myocardial heart disease.

"Eighth: . . . that the accident sustained by the decedent while in the employ of the defendant on November 16, 1948, and the resultant myocardial damage, was the contributory factor in his death occurring on October 15 [1], 1949."

The medical testimony as to causal connection between the accident and the death was conflicting. But the issue was one of fact for the compensation authorities, and the credibility of those qualifying as experts is not reviewable as a matter of law. *Williams v. Susquehanna Collieries Co.,* 148 Pa. Superior Ct. 540, 544, 25 A. 2d 751. Credibility of witnesses is always for the finders of fact. *Archer Estate,* 363 Pa. 534, 536, 70 A. 2d 857.

Dr. George Tolstoi, pathologist at the Uniontown Hospital, who had performed an autopsy on deceased, testified that death resulted from the myocardial infarction produced by coronary occlusion. The report of the autopsy was admitted in evidence without objection, and indicated that deceased had suffered from multiple infarctions of the heart, less recent, secondary to old coronary occlusions, and that his heart was enlarged. Claimant then called two medical experts, Dr. H. E. Ralston and Dr. W. Ralston McGee. Dr. McGee, the county coroner who signed deceased's death certificate, while agreeing with Dr. Tolstoi as to the immediate cause of death, stated that in his opinion the blow that deceased received on November 16, 1948, was a contributing factor in his death on October 1, 1949. He recognized that deceased had coronary arteriosclerosis for a number of years prior to his death. Dr. Ralston was the family doctor and treated deceased for his accidental injury. Dr. Ralston testified: "A. I am taking into consideration knowing this man prior

to this accident and what his condition was following the accident and also the findings at autopsy. I agree heartily with the findings of Dr. Tolstoi, the pathologist, that this man died as a result of myocardial infarction with acute coronary occlusion. However, I also want to give my professional opinion that the myocardial damage suffered by Mr. Malik, as the result of his accident on the 16th of November, 1948, was a contributory factor in his death. That is my professional opinion."

Appellants rely upon the testimony of two pathologists, one of whom was Dr. Tolstoi. Both stated that in their professional opinion death resulted from a natural not traumatic cause, and that death was the terminal result of the usual progression of the arteriosclerotic condition.

It is argued on behalf of appellants that the evidence was insufficient to support the award, and that the findings of fact were likewise insufficient. The argument is without merit in both respects. The referee found that the accidental injury was "the contributory factor in his [deceased's] death," and this finding is based on the evidence. The Board in affirming the referee's findings of fact and the award stated: "It is immaterial whether the blow and the original injuries were the cause of death, or whether the original blow and injuries aggravated a preexisting condition, which resulted in death. In either event, defendant would be liable for the payment of compensation. . . . the accident was at least a contributing cause of the death, . . ." See *Rosenberger v. Mar-Bern Coal Co.*, 151 Pa. Superior Ct. 373, 378, 30 A. 2d 153. All of claimant's evidence pointed to the accident as contributing to, rather than being the sole cause of, the death. While Dr. Ralston did not say that deceased's arteriosclerotic condition was aggravated by the acci-

dent, he did state that the sclerotic condition of deceased had weakened the heart muscle which was further damaged by the accidental injury.

In *Campbell v. Oakmont Borough,* 157 Pa. Superior Ct. 283, 286, 287, 43 A. 2d 237, 238, we said: "This physician testified at the hearing that in his professional opinion the myocardial damage suffered by Campbell as the result of the occurrence on May 26, 'was a contributory factor to his death on December 31st.' This direct expression of an opinion, notwithstanding there was medical testimony offered upon the part of the appellants that there was no causal connection between the fatal heart attack and the alleged accident of May 26, was sufficient for the compensation authorities to find as a fact that the accident was a contributory cause of Campbell's death: Elonis v. Lytle Coal Company, 134 Pa. Superior Ct. 264, 3 A. 2d 995."

The *Campbell* case is applicable to the present appeal. There, as here, the employe was apparently in good health at the time of the accident, although in the early stages of an arteriosclerotic condition which had not yet manifested symptoms of cardiac distress. Neither was able to make a full recovery although both were able to return to work to some extent and subsequently succumbed to heart attacks. In the present case the Board, in weighing the medical testimony, could conclude that the initial appearance of symptoms of heart disease following the accident was not merely coincidental, and that the injuries from the accident accelerated the employe's death. Cf. *Rosenberger v. Mar-Bern Coal Co.,* supra, 151 Pa. Superior Ct. 373, 30 A. 2d 153; *Williams v. Susquehanna Collieries Co.,* supra, 148 Pa. Superior Ct. 540, 543, 25 A. 2d 751. In this connection the Board stated: "We are of the opinion that the testimony clearly establishes that the blow received by the decedent set into operation a se-

quence of events . . . terminating in decedent's death on October 15 [1], 1949." It was within the province of the Board to weigh the conflicting expert testimony and to accept or reject that of any witness. *Frick v. Pittsburgh School District*, 167 Pa. Superior Ct. 431, 74 A. 2d 659; *Williams v. Susquehanna Collieries Co.*, supra, 148 Pa. Superior Ct. 540, 544, 25 A. 2d 751. The theory of claimant's medical experts was accepted.

Finally appellants' contention that Dr. Tolstoi became claimant's witness for all purposes because he was originally called by claimant is without merit. Dr. Tolstoi was called by claimant to testify to the immediate cause of deceased's death as disclosed by the autopsy which he had performed. He was not questioned on direct examination relative to the causal connection between the accidental injury and the death. When appellant attempted to do so on cross-examination it was beyond the scope of the direct examination and claimant's objection was properly sustained. *Snyder v. Reading Co.*, 284 Pa. 59, 130 A. 398. Subsequently appellants called Dr. Tolstoi and elicited his opinion on the issue of causal relationship. Claimant could call Dr. Tolstoi to establish the result of the autopsy without having him express his opinion as to any causal connection between an accidental injury and deceased's death.

We are of the opinion that the findings of the compensation authorities are supported by sufficient, competent evidence, and that the law has been properly applied. We may not disturb the judgment entered on the award. *Frick v. Pittsburgh School District*, supra, 167 Pa. Superior Ct. 431, 432, 74 A. 2d 659.

Judgment is affirmed.