Nelson *v.* Borough of Greenville et al., Appellants.

Argued April 12, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Karl E. Weise,* with him *Hirsch & Weise and Stranahan & Sampson,* for appellants.

*George Hardy Rowley,* with him *Voorhies, Dilley, Keck & Rowley,* for appellee.

OPINION BY WRIGHT, J., July 17, 1956:

Raymond L. Nelson, aged 42, died on February 6, 1954. We are here concerned with the claim of his widow under The Pennsylvania Workmen's Compensation Law.[1] The Referee made an award which was affirmed by the Board. An appeal was taken to the Court of Common Pleas of Mercer County, which tribunal affirmed the award and entered judgment in favor of the claimant. This appeal to the Superior Court followed. The factual situation is set forth in the

---

[1] Act of June 2, 1915, P. L. 736, as amended, 77 PS §1 et seq.

following excerpt from the opinion of Judge McKay for the court below:

"On January 22, 1954, Raymond L. Nelson, the decedent, was a paid fireman employed by the Borough of Greenville as assistant fire chief. He had been continuously employed as a paid fireman for ten years.

"Upon the evening of that day a fire occurred in West Salem township, which adjoins Greenville, the fire being approximately one-eighth of a mile from the borough limits. There was an agreement in effect between the authorities of the township and of the borough which provided that when either municipality called upon the other for aid in putting out a fire, the other would respond. The General Borough Act of 1927, P. L. 519, Section 1202, as amended, 53 PS §1337 (a), authorizes an agreement of this character.

"When the serious nature of the fire was learned, the chief of the township fire department requested aid of the Greenville fire department, whereupon the Greenville chief, Howard C. Callahan, started for the fire in the borough fire truck, first instructing the attendant at the fire station to call two or three of the paid employees of the Greenville fire department to report at the fire. The attendant called the decedent at his home, whereupon the latter drove directly to the scene of the fire (in his own automobile) and reported to Fire Chief Callahan. It was a part of decedent's duty to be on call 24 hours a day and he was required by his employment to respond to a summons of the character received, whether the fire was within or outside of the borough.

"During that time that he was fighting the fire, Nelson acted under the orders and at the direction of the Greenville chief, but both he and the chief were under the general direction of the chief of the West Salem township fire department.

"While engaged in attempting to extinguish the fire, and at the instruction of the chief, Nelson and another Greenville fireman (Keelen) entered the burning building, the interior of which was on fire and filled with smoke. Keelen testified that there was more smoke than with the average fire, and that it was very thick. Keelen and Nelson were on their knees as they fought the fire, and took turns returning to the outside to get fresh air. After remaining from six to nine minutes on the porch of the burning house, Nelson went to the truck, got an oxygen mask, returned to the fire, adjusted the mask to his face and re-entered the building. He remained inside the burning building for another three or four minutes. When he came out he took off the mask, coughed, and went to the truck. He later returned complaining of pain in his arms and chest, and asked Keelen to take him home. He spent twenty minutes in all in the smoke. While being taken to his car he collapsed. He was removed to the Greenville Hospital, where he died on February 6, 1954. An autopsy disclosed that he had coronary sclerosis prior to his death".

On this appeal the appellants raise the same three questions which were unsuccessfully advanced before the Board and in the court below. In our consideration of the case we cannot independently weigh the evidence and substitute new findings for those of the workmen's compensation authorities: *Greap v. Oberdorff*, 178 Pa. Superior Ct. 153, 113 A. 2d 339. Where the findings of the Board are supported by the evidence, they are binding upon us: *Messikomer v. Baldwin Locomotive Works*, 178 Pa. Superior Ct. 537, 115 A. 2d 853. Moreover, in determining whether the evidence is sufficient to sustain the findings, we are required to review it in the light most favorable to the

claimant: *Yaklich v. Union Collieries Co.*, 158 Pa. Superior Ct. 55, 43 A. 2d 591.

Appellants first contend that the decedent "was not an employee of the Borough of Greenville at the time of the alleged occurrence, but was a loaned employee to West Salem Township". In this connection the Referee found that the decedent "was working with and under the direction of H. C. Callahan his superior, who was the Fire Chief for the Borough of Greenville". Appellants' contention is based on testimony "that the Borough of Greenville fire department would not answer calls from an outside township unless they got a call from the fire chief in the outside township for aid". It is argued that Nelson was working at the time only because of "the fact that the Greenville company was called to attend the fire in West Salem Township"; and that "there can be only one conclusion, namely, that the attendance of Nelson at the fire was for the sole benefit and advantage of West Salem Township". This argument overlooks, first, the fact that decedent was actually on call at all times by the Greenville fire department and, second, the fact that decedent's attendance at the West Salem fire was at the command of his own chief and was under a mutual aid arrangement between the fire companies. Appellants stress Callahan's testimony that the fire chief of West Salem Township was in charge during the fire. However, Callahan further testified that he nevertheless "maintained control over his own Department's men and equipment". Moreover, the evidence is clear that, when Nelson arrived at the fire, he reported to Callahan and received all of his orders from him. There is no evidence whatever that there was any contact or communication between Nelson and the chief of the West Salem company.

It is of course true, as appellants contend, citing *Scattone v. Mulholland*, 290 Pa. 341, 138 A. 855, and *Tarr v. Hecla Coal & Coke Co.*, 265 Pa. 519, 109 A. 224, that " 'Where one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as a servant of the man to whom he is lent . . .' " The essential test is which employer had control or the right of control at the time of the accident, not only with regard to the work to be done but also as to the manner of performing it: *Ramondo v. Ramondo*, 169 Pa. Superior Ct. 102, 82 A. 2d 40. In the words of our colleague, Judge HIRT, in an opinion handed down this date in *Mitchell v. East Nantmeal Township*, 181 Pa. Superior Ct. 482, 124 A. 2d 150: "The difficulty is not with the law, for it is well settled; the problem in cases of this class, is the application of settled principles to the peculiar facts of each particular case . . . In a case where the facts are not in dispute or where the evidence leaves no sufficient ground for inconsistent inferences therefrom, the question as to who is the servant's employer may be for the court. But where the evidence, as here, raises an issue of fact, or contradictory inferences can be drawn from it, the question is one for determination by the fact finders—in these cases the referee and the board."

In our view, the evidence fully supports the finding of the Referee that the deceased was an employe of Greenville Borough. There is nothing in the record to warrant a finding to the contrary. Nelson did not change, nor did he consent to change, his status from that of an employe of Greenville Borough to that of an employe of West Salem Township. At no time did he come directly under the supervision of the West Salem chief. The immediate control of decedent's ac-

tivities was at all times in the chief of the Greenville company. The inference from the testimony is that the function of the West Salem chief was to coordinate the efforts of the two fire companies. Had there been conflicting orders, there is no doubt that decedent would have obeyed his own chief. Cases involving somewhat analagous situations are *Barclay-Westmoreland Trust Co. v. Latrobe Borough*, 131 Pa. Superior Ct. 513, 200 A. 271; *Sonnett v. Stowe Twp.*, 100 Pa. Superior Ct. 397; *Sames v. Boro. of Perkasie*, 100 Pa. Superior Ct. 402.

Appellants next contend that Nelson "did not sustain a compensable accident within the meaning of the Workmen's Compensation Law". In this connection we deem it appropriate to quote the language of Judge (later President Judge) KELLER in *Foster v. State College Borough*, 124 Pa. Superior Ct. 492, 189 A. 786, as follows: "Even a paid fireman, who devotes his whole time to such employment, spends most of his time about the engine house, seeing that equipment is in order, and in drills and in waiting for calls and alarms, and over-exertion in running to a fire on his part, or hurriedly climbing a ladder, or handling heavy hose, if it resulted in dilation of the heart or cardiac collapse would be accidental, notwithstanding that, in the line of his duty, he is called upon to do it occasionally, but not regularly, or day in and day out, as part of his usual, ordinary, and accustomed work. It is unfair and unreasonable, in the very nature of things, to apply to an inherently irregular, intermittent and unusual employment such as this the rules laid down for regular, stable, usual and continued occupations".

The record discloses that the Greenville Fire department answered between 70 and 80 calls a year, that sometimes these calls were for emergencies other than

fires, and that the firemen actually spent most of their time maintaining the equipment. The testimony concerning the fire here involved established that it was more severe than average, and that the entire interior of the building was filled with flames and smoke. When Nelson arrived at the scene he was instructed by Callahan to go to the pumper and place the booster tank in operation. He then went to the porch and assisted Keelen in playing water from the booster tank hose through a doorway. At that time the smoke was heavy and thick, so much so that it was necessary for the men to get on their knees. After several minutes Nelson went back to the pumper for an oxygen mask, returned and took the hose into the building. During this period Keelen observed Nelson tugging at the mask, and "could see something was wrong with the mask". When Nelson emerged from the house and took off the mask he was coughing from the effect of the smoke, complained of pain in his arms and chest, and collapsed on the way to his car. This testimony was clearly sufficient to establish an injury resulting from unusual exertion in the course of employment and the Referee was therefore justified in concluding that "the death of the decedent was the direct result of an accident". See *Updegraff v. Pennsylvania Game Commission,* 163 Pa. Superior Ct. 112, 60 A. 2d 605; *Manikowski v. Morris Run Coal Mining Co.,* 163 Pa. Superior Ct. 118, 60 A. 2d 344; *Lemmon v. Pennsylvania Department of Highways,* 164 Pa. Superior Ct. 254, 63 A. 2d 684; *Campbell v. Oakmont Borough,* 157 Pa. Superior Ct. 283, 43 A. 2d 237; *DeEsch v. Emmaus Borough,* 143 Pa. Superior Ct. 225, 18 A. 2d 89; *Barr v. Atlantic Elevator Co.,* 124 Pa. Superior Ct. 57, 187 A. 815. The cases relied upon by appellants[2] are

---

[2] *Cope v. Philadelphia Toilet Laundry & Supply Co.,* 167 Pa. Superior Ct. 205, 74 A. 2d 775; *Shatto v. Bardinet Exports, Inc.,*

readily distinguishable. They involve situations in which the employe was performing his customary work, and there was no evidence of unusual exertion.

Appellants contend finally that "There is no unequivocal medical testimony to support the finding of a causal connection between an accident and the decedent's death." They cite *Elonis v. Lytle Coal Co.*, 134 Pa. Superior Ct. 264, 3 A. 2d 995, for the proposition that "Where there is a serious question whether the disability is the result of an accident, unequivocal medical testimony is necessary". We had occasion to consider this principle in the recent case of *Washko v. Ruckno, Inc.*, 180 Pa. Superior Ct. 606, 121 A. 2d 456.

For the claimant, Dr. A. L. Bailey testified as follows: That he first examined Nelson on the morning of January 23, 1954; that "he was in shock and suffering from lateral myocardial infarction", which results from "an occlusion of one of the coronary arteries"; that he participated in the autopsy which was performed after Nelson's death; that it revealed "Hemopericardium, which was due to a rupture of the left ventricle . . . the direct result of the coronary occlusion"; that Nelson "had a moderate amount of coronary sclerosis and an excessive demand for oxygen, which could not be satisfied, bringing about an occlusion"; that Nelson "was getting too much smoke"; that death was due to an "unusual strain on the heart which it could not handle"; that "a decreased oxygen

---

170 Pa. Superior Ct. 16, 84 A. 2d 388; *Doyne v. Lummis & Co.*, 170 Pa. Superior Ct. 93, 84 A. 2d 354; *Good v. Pennsylvania Department of Property and Supplies*, 346 Pa. 151, 30 A. 2d 434; *McFeeley v. Brownsville School District*, 159 Pa. Superior Ct. 432, 47 A. 2d 925; *Crispin v. Leedom and Worrall Co.*, 341 Pa. 325, 19 A. 2d 400; *Ricketts v. The Bell Telephone Co.*, 178 Pa. Superior Ct. 588, 115 A. 2d 818; *Rathmell v. Wesleyville Borough*, 351 Pa. 14, 40 A. 2d 28.

supply puts a strain on the heart"; and that the cause of Nelson's occlusion was that "he had breathed in considerable quantities of smoke"; that Nelson's pre-existing coronary sclerosis, revealed by the autopsy, was aggravated by the events which took place at the fire; and that death could not have ensued without "undue strain" on Nelson's heart.

For the appellants, Dr. A. L. Hunter testified that the autopsy revealed "massive hemopericardium from a ruptured left ventricle. Etiology—acute myocardiam, due to coronary sclerosis, severe". However, Dr. Hunter stated on cross-examination that "the direct cause" of death was not coronary sclerosis but coronary occlusion; "that this smoke, with the existing coronary disease he had, would be an unusual stimulant to the distress"; and that he found "no scar tissue in this case which would indicate previous attacks". In answer to a question from the Referee, Dr. Hunter expressed the opinion that the cause of Nelson's death "was precipitated, or aggravated by his activities at this fire". He subsequently stated that "it was a contributory factor". Dr. H. S. Gibbs also testified for the appellants. Basing his opinion upon the testimony and the records, he stated that "Mr. Nelson had his myocardial infarction before he went to the fire"; that death "was not accidental, but resulted from a pre-existing heart disease".

The Referee declined to accept the conclusion of Dr. Gibbs, and found to the contrary, based on the testimony of Dr. Bailey and Dr. Hunter, that Nelson's death was "the direct result of a coronary occlusion which was due to an unusual strain of the heart, said strain being brought about by inhaling considerable quantities of smoke and other strenuous exertion while fighting a fire on January 22, 1954, all of which aggravated a pre-existing coronary sclerosis condition,

which aforesaid coronary sclerosis condition had never previously caused the decedent any trouble".

In view of the contradictory nature of the medical testimony, the acceptance of that favoring the claimant, rather than that favoring the employer, was a matter for the fact finding authorities: *Schumacher v. Wilson, Inc.*, 157 Pa. Superior Ct. 249, 42 A. 2d 191; *Garvin v. Philadelphia Transportation Co.*, 173 Pa. Superior Ct. 15, 94 A. 2d 72; *Malik v. Uniontown*, 172 Pa. Superior Ct. 562, 94 A. 2d 151. As was said by Judge (now President Judge) RHODES in *Wilkinson v. United Parcel Service of Pennsylvania*, 158 Pa. Superior Ct. 22, 43 A. 2d 408: "The credibility of medical witnesses and the weight to be attached to the testimony of each are matters finally and exclusively for the board, and where any conflicts appear in such experts' theories or opinions it is for the board to decide which conclusion it will adopt". The medical testimony of Dr. Bailey and Dr. Hunter, heretofore detailed, clearly supports the Referee's finding on the question of causal connection. See *Hodgdon v. Kerr Salt Co.*, 176 Pa. Superior Ct. 177, 106 A. 2d 621.

Judgment affirmed.