## Iezzi, Appellant, *v.* Creamer Construction Company.

Argued December 12, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*William Bruno,* with him *John V. McDonald,* for appellant.

*Frank R. Ambler,* for appellees.

OPINION BY WOODSIDE, J., March 19, 1963:

In this workmen's compensation case, the referee granted compensation to the claimant. The board reversed the referee, and its decision denying compensation was affirmed by the Court of Common Pleas No. 6 of Philadelphia County. This appeal followed.

Where the decision of the board is against the party having the burden of proof—bearing in mind that a trier of fact is not required to accept even uncontradicted testimony as true—the question before the court is whether the board's findings of fact are consistent with each other and with its conclusions of law and its order, and can be sustained without a capricious disregard of the competent evidence. *Walsh v. Penn Anthracite Mining Co.,* 147 Pa. Superior Ct. 328, 333, 24 A. 2d 51 (1942) ; *Seisek v. Blaw-Knox Co.,* 192 Pa. Superior Ct. 347, 349, 162 A. 2d 33 (1960). The answer to this question is in the affirmative.

The claimant contends that her husband's death was the result of an accident; the defendant contends that it was due to natural causes. The death certifi-

cate showed that the claimant's husband died of hypertensive and arteriosclerotic cardiovascular disease. The decedent was employed as a carpenter by Creamer Construction Company for three years before his death. On July 18, 1958 decedent was working in an excavation approximately 4 to 5 feet deep. It was a hot morning, and the smell of chemicals was present in the excavation. His job was to cut wood pilings which were about one foot in diameter. He had been doing this type of work for at least two months.

After cutting one or two pilings, decedent's saw jammed and while he was attempting to remove the saw from the piling, he cut his finger on a rusty pipe. He left work, and went to a hospital where the cut on his finger was closed with one stitch and he received a tetanus shot. The defendant did not return to work. That evening he drove to Wildwood, New Jersey, where he remained with his family until July 27th when he drove back to Philadelphia. He was found dead in bed on July 29, 1958.

The claimant contends that the board disregarded the cut finger, which was unquestionably an accident, and therefore did not give proper consideration to the testimony. The physician who took the stand on behalf of the claimant testified that the decedent had a pre-existing heart disease which was aggravated by the circumstances which occurred on July 18. However, the physician who testified for the defendant, with knowledge of the same facts, stated that the decedent's death was due to natural causes and that many of the people with this disease die in bed.

It is clear from the record that the board was faced with a factual determination. Two medical experts gave divergent opinions as to the causal relationship of decedent's accident, i.e., cut finger, to his death. It was within the province of the board to weigh conflicting expert testimony as to cause of death, and to ac-

cept or reject that of any witness. *Malik v. Uniontown*, 172 Pa. Superior Ct. 562, 568, 94 A. 2d 151 (1953).

Decision affirmed.