McCann *v.* Cross Brothers Meat Packers, Inc. et al., Appellants.

Argued March 17, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Raymond J. Porreca,* for appellants.

*Don F. D'Agui,* with him *Albert Ring,* and *D'Agui and Del Collo,* for appellee.

OPINION BY WATKINS, J., April 15, 1965:

This is an appeal by the employer and its insurance carrier from an order of the Court of Common Pleas No. 4 of Philadelphia County, dismissing an appeal from an award by the Workmen's Compensation Board. The Referee awarded compensation; the Board affirmed the Referee; and the Court of Common Pleas sustained the Board.

The claimant, Martin McCann, age 19 and single, was last employed on February 13, 1961, by Cross Brothers Meat Packers, Inc. Until that time he was always apparently in good health and able to perform his duties as a meat packer. At about 4:30 a.m., on

February 13, 1961, there is evidence that a leak developed in the refrigeration system permitting ammonia fumes to escape into a working area. He smelled the fumes; his eyes watered; he became dazed and woozy and began coughing; at about 8:00 a.m., when he went to change his clothes he collapsed into a state of unconsciousness. He was taken to the Episcopal Hospital where subsequent surgery revealed a ruptured aneurysm in one of the arteries of the brain. Since that date he has been completely and permanently disabled due to a partial paralysis and convulsive seizures resulting from the brain damage.

The contention of the appellants that the claimant did not give notice of the accident within the statutory period is without merit. Section 311 of the Act of June 2, 1915, P. L. 736, as amended, 77 P.S. §631. This claimant was overcome at his place of work and removed to the hospital so that actual notice of the occurrence was brought home to his employer, through its agents. The claimant's supervisor, Mr. Stackhouse, visited the claimant in the hospital and representatives of the insurance carrier appellant interviewed the claimant and members of his family. "It would not come with good grace for an employer who had actual knowledge of a compensable injury to his employee at the time of its occurrence to endeavor to escape liability because he had not been served with formal notice of the occurrence of the injury." *Wilkinson v. United Par. Serv.*, 158 Pa. Superior Ct. 22, 43 A. 2d 408 (1945). Courts should not read into the Workmen's Compensation Act a stricter requirement than the language of the Act imports in regard to notice of an accident. It must be liberally construed. The purpose of the notice is to protect the employer from stale claims made for accidental injuries after the opportunity for a full and complete examination is passed. Such was not the case here. *Allen v. Patter-*

*son-Emerson-Comstock,* 180 Pa. Superior Ct. 286, 119 A. 2d 832 (1956); *Santillo v. Pbgh. Rwys. Co.,* 181 Pa. Superior Ct. 266, 124 A. 2d 657 (1956).

The second contention of the appellants was that there was no evidence of an accident. There was testimony by the claimant and his brother that a leak developed in the refrigeration system causing ammonia to be released into the working area. That they both smelled ammonia; that the claimant's eyes watered; that he became woozy; that the ammonia induced coughing; about 8:00 a.m., that morning the claimant blacked out. The leak from which the gas escaped was located immediately above his working table so that the fumes were concentrated there. We agree with the court below that there was sufficient competent evidence to support the findings of the Board of an untoward incident upon which the legal conclusion that an accident occurred was based.

The third contention of the appellants is that there is no causal connection between the accident and the disabling injury or disease. The appellants do not raise the question of disability so this Court is bound by the findings of the Referee and the Board that the claimant suffered total disability as a result of a ruptured aneurysm of an artery in the brain with attendant subarachnoid hemorrhage and jacksonian epilepsy.

Dr. Victor A. Digilio testified at length concerning the disability of the claimant and stated unequivocally that "In my judgment, this young man suffered a rupture as a congenital aneurysm in the intercranial aneurysm as the result of the symptoms, mainly the continually coughing which was occasioned by the escaping of ammonia fumes within the working area." The cases cited by the appellants all presuppose the claimant was doing his usual work or duties and there was no accident, just the rupture. In this case we

have an accident. The inhalation of the ammonia fumes from a leak in the refrigeration system which is not a normal and usual duty of the claimant. After the operation, Dr. Digilio testified that the left arm was not returned to the functional state; that he had lost seventy pounds; that he had four convulsions in which he fell unconscious. He further testified that the cerebral aneurysm is of a congenital origin and that this was the first time he had seen such a rupture in one so young. There were no symptoms before February 13. He testified that in his opinion the inhalation of the ammonia fumes was the efficient producing cause of the total disability that resulted.

"If death comes, during the course of employment, in an ordinary way, natural to the progress of a disease with which one is afflicted, and with which he was smitten before the accident, there can be no recovery . . .; but, if the demise is brought about by an injury due to some mishap, or accident, happening during the course of his employment, the fact that deceased had a chronic ailment which rendered him more susceptible to such injury than an ordinary person would be, will not defeat the right to compensation." Clark v. Lehigh Valley Coal Co., 264 Pa. 529, 533, 107 A. 857, 859 (1919). See also: Nelson v. Boro. of Greenville, 181 Pa. Superior Ct. 488, 124 A. 2d 675 (1956); Fehr v. Y.M.C.A., 201 Pa. Superior Ct. 107, 114, 192 A. 2d 143 (1963).

In this case the young claimant had a congenital weakness of which he had no knowledge. This condition, perhaps, rendered him more susceptible to injury as a result of the escaping gas than an ordinary person. The medical expert pointed out that it was the first time in his long experience that he found such a rupture in a man so young.

There was a conflict of medical testimony as to causal connection but there was unequivocal medical

testimony that such causal connection existed and the conflict was properly resolved by the Board. The credibility of medical witnesses and the weight of their testimony are matters finally and exclusively for the Board. *Kish v. Steele Coal Co.,* 185 Pa. Superior Ct. 257, 137 A. 2d 855 (1958).

Order affirmed.