KATHERINE M. LAURIA, PETITIONER, v. BOROUGH OF RIDGEFIELD, RESPONDENT-APPELLANT, v. BOROUGH OF CLIFFSIDE PARK, RESPONDENT-RESPONDENT.

Bergen County Court

Decided May 16, 1972.

*Messrs. Meyner & Wiley,* attorneys for respondent-appellant Borough of Ridgefield.

*Messrs. Carpenter, Bennett & Morrissey,* attorneys for respondent-respondent, Borough of Cliffside Park.

TOSCANO, J. C. C. This action is an appeal by the Borough of Ridgefield from that part of a final judgment which, by an order of June 30, 1970, dismissed Ridgefield's petition against the Borough of Cliffside Park.

The two parties in this appeal, the Boroughs of Ridgefield and Cliffside Park, have submitted the following agreed statement of facts to the Division of Compensation:

At 4:00 A.M. on Sunday, October 15, 1967, the Cliffside Park Fire Department, (hereinafter "Cliffside") consisting of paid and volunteer firemen, responded to an alarm regarding a fire at 515 Anderson Avenue, Cliffside Park, the premises of Cardinal Lanes. In the course of fighting the fire, Cliffside summoned other municipalities with whom it is associated in the East Bergen Mutual Aid. The municipalities in the group are: Cliffside Park, Englewood Cliffs, Fairview, Fort Lee, Leonia, Palisades Park, Ridgefield and Box 54 Club "Honorary". The Ridgefield Fire Department (hereinafter "Ridgefield") responded and was assisting in the operation when the north wall collapsed, injuring members of the Ridgefield, Fairview and Cliffside Park Fire Department, and killing five members of the Ridgefield squad, one of whom was petitioner's decedent, James Lauria. At the time of the accident, the Fort Lee Fire Department was also on the scene, with the Fairview Fire Department arriving later.

The Mutual Aid By-Laws provided, by their terms, that the "Chief or Commanding Officer of town requesting aid is in charge of all towns and coordinators responding to the alarm". In the within matter, Chief John Nagel, a paid fireman of Cliffside Park, was, under the terms of the agreement, in charge of fighting the fire and, in fact, directed and controlled the activities of the Ridgefield Fire Department and others assisting in combating the blaze.

The Mutual Aid By-Laws concerned herein do not provide for reimbursement by the summoning municipality of any payments made by another municipality to a member of its fire department, or to his widow or other dependent, on account of injuries sustained or death suffered by him in the course of rendering mutual aid in extinguishing a fire in the summoning municipality.

Petitioner filed a claim for compensation against her decedent's employer, the Borough of Ridgefield, and is presently receiving benefits from Ridgefield. Ridgefield filed a claim against Cliffside Park con-

tending that Cliffside Park is a co-employer of the petitioner's decedent, Mr. Lauria.

After filing the claim against Cliffside Park on April 16, 1968, Ridgefield sought to join the other municipalities that are members of the East Bergen Mutual Aid, and obtained the order of April 7, 1969 to that effect. There followed a rather complex set of procedural steps that culminated in an order of January 30, 1970 dismissing the petitions against Cliffside Park and the other municipalities. At that time Judge Rosenthal found "no basis of liability in this Court as relates to the Borough of Cliffside Park." The order was later reduced to judgment by the order presently under attack, dated June 30, 1970 and signed July 1, 1970 by Judge Rosenthal.

Again, there followed additional procedural measures, resulting in a final judgment against Ridgefield in favor of petitioner's decedent, entered on April 29, 1971. Ridgefield now asks this court to hold that Cliffside Park was either the sole employer or the joint employer of the petitioner's decedent.

There is no statutory provision precisely on point that is dispositive in this case. Both parties to the controversy have engaged in extensive analysis of the pertinent statutory framework in order to determine whether the aiding or the summoning municipality either bears absolute liability or is precluded from liability for the injuries of petitioner's decedent.

It is the position of Ridgefield, the aiding borough, that the statutes are inconclusive on the above issue. As a result, the court should look to common law and decide the instant case on an *ad hoc* basis, keeping in mind the announced legislative policy to foster mutual aid agreements. Additionally, Ridgefield argues that petitioner's decedent falls within the definition of an "authorized worker" in *N. J. S. A.* 34:15–43 for the purposes of finding Cliffside Park, the summoning borough, liable.

Cliffside Park, on the other hand, stresses that an underlying policy of all workmen's compensation statutes is to establish certainty in identifying the employer to whom an injured employee can look for relief, and by whom insurance must be obtained in order to provide such relief. *Ad hoc* determinations of liability contravene this policy. In any event, an application of common law principles, and even of *N. J. S. A.* 34:15–43, to the situation at hand would not dictate a finding that Cliffside Park is liable.

■ This court is of the opinion that the resolution of the matter at bar must be primarily founded upon an interpretation of the pertinent statutes. A municipal corporation is a creature of the State Legislature. Its powers are derived from, and its boundaries are established by, the Legislature. Such boundaries mark the limit of the municipality's jurisdiction and authority, and no extramural authority exists unless expressly granted. *Good Deal of Ivy Hill, Inc. v. Newark,* 32 *N. J.* 263, 266–267 (1960).

■■ Consequently, only statutory law, and not common law, can enumerate the powers and responsibilities of a municipality and geographically limit their exercise. The mandate of our State Constitution to liberally construe statutes pertaining to municipalities, *N. J. Const.* (1947), Art. IV, § VII, par. 11, does not connote an extension of the statutory phraseology as commonly used. *Grogan v. De Sapio,* 11 *N. J.* 308, 316 (1953).

■ In the case at hand the applicable statutory phraseology is found in various provisions of chapters 34 and 40. According to *N. J. S. A.* 34:15–43, every volunteer fireman injured in the line of duty shall be compensated under the Workmen's Compensation Law. *N. J. S. A.* 34:15–74 requires that every municipality provide compensation insurance for volunteer firemen who are under the control of that municipality. However, if a volunteer fire company is located outside of the boundaries of a municipality that it serves, and that contributes to its support, then said municipality

need not provide insurance coverage when the municipality in which the company is located provides such.

In its reply brief Ridgefield quoted the legislative statement annexed to *N. J. S. A.* 34:15–74, expressing the following legislative intent:

> \* \* \* to assure insurance coverage for all such workers and to eliminate duplication for such coverage where the fire companies or rescue squads serve more than one municipality or fire district.

■ Apparently, prior to the enactment of the above statute there must have been some uncertainty as to whether a municipality contributing to and served by an out-of-town fire company was an employer for the purposes of the Workmens Compensation Law. The Legislature was not interested in which municipality carried the insurance, as long as the firemen were fully, yet not doubly, covered. Of course, the municipality that carried the insurance would be the one responsible for making compensation payments. The municipality in which a fireman is injured is not automatically liable as an employer.

The instant situation is far less ambiguous than that envisoned in *N. J. S. A.* 34:15–74, since both boroughs are required by statute to provide full coverage for all of their own volunteers. If each member of a mutual aid agreement had to provide coverage for any fireman that might be injured within its borders, there would be, in this instance, duplication four times over, seeing that eight municipalities are involved.

Nevertheless, *N. J. S. A.* 40:47–68, while making it lawful for municipalities to enter into mutual aid contracts to extinguish fires in emergencies, also permits such contracts to provide for reimbursement for payments lawfully made to a fireman's dependents. It has been stipulated that the contract in issue does not provide for this type of reimbursement.

■ In the absence of the above statute, a municipality would be without authority to reimburse an out-of-town aid-

ing fireman under a mutual aid contract. Municipalities are still without authority to make such reimbursements when there is no contractual obligation to do so. The bald authority to make contractual reimbursements would be ineffectual without the authority to raise by taxation and appropriate the necessary sums, as is granted by *N. J. S. A.* 40:47–72.

This taxing power is expressly limited to reimbursements made pursuant to a mutual aid contract. In New Jersey the power of taxation is vested in the Legislature. Municipalities have no comparable power except to the extent plainly delegated to them by the Legislature. *Salomon v. Jersey City,* 12 *N. J.* 379, 383 (1953). There has been no delegation of taxing power for reimbursements not provided for by contract.

When a municipality is not under contract to render emergency mutual aid, it can still lawfully do so under *N. J. S. A.* 40:47–12.1. Should its firemen be injured or killed in the summoning municipality, they are entitled to pension rights and compensation as if injured in the aiding municipality. In other words, a municipality's authority to provide relief for its own volunteers extends beyond its geographical boundaries.

The fact that there was a contract in the case at bar does not make *N. J. S. A.* 40:47–12.1 inapplicable. Since there was no contract provision for relief payments, that portion of the above statute that extends the aiding municipality's authority to take care of its own should be controlling. Ridgefield points out that this statute, as it stood at the time of petitioner's decedent's death, did not expressly state "workmen's compensation." A 1968 amendment included workmen's compensation with the other benefits. Ridgefield argues that the amendment should be given prospective effect only, and cites the cardinal rule of statutory interpretation:

\* \* \* words in a statute ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning

can be annexed to them, or unless the intent of the legislature cannot otherwise be satisfied. [*Connell v. Carpenter*, 9 *N. J. Super.* 236, 241 (App. Div. 1950)]

This court feels that the amendment discloses the intent of the Legislature when *N. J. S. A.* 40:47–12.1 was initially enacted. Although the amendment affects substantive rights, it clarifies rather than creates them, due to the fact that all volunteer firemen already had a right to workmen's compensation, and their respective municipalities had a responsibility to provide for such.

 It is the decision of this court that there is no statutory authority for a summoning municipality to reimburse out-of-town firemen injured within its borders. Ridgefield refers to *N. J. S. A.* 40:47–29, which grants an aiding municipality immunity for damages it causes within the summoning municipality, as an example of the legislative concern in fostering mutual aid agreements. This concern, though, has not been expressed with respect to damages sustained by the aiding municipality. Without express statutory authority to that effect, this court cannot hold Cliffside Park liable.

In conformity with the above analysis, the common law principles of special employer and co-employer are irrelevant and inapplicable. Still, this court feels that petitioner's decedent acted as an employee of Ridgefield while answering the emergency fire in Cliffside Park, and never entered the employ of Cliffside Park.

 The finding that petitioner's decedent was exclusively employed by Ridgefield at the time of the fire precludes a determination that petitioner's decedent was an "authorized worker" of Cliffside Park within the scope of *N. J. S. A.* 34:15–43, because he was not subject to the control of Cliffside Park's fire company. Contrary to the situation in *Volek v. Deal*, 83 *N. J. Super.* 58 (App. Div. 1964), petitioner's decedent was authorized to attend the Cliffside Park

fire by virtue of the fact that he was an authorized employee of Ridgefield.

In line with the above determination, see *Kuntzwiller v. City of West Lafayette,* 108 Ind. App. 474, 29 *N. E.* 2d 1007 (Ind. App. Ct. 1940), where the court found that the risk of being injured in a summoning municipality was an incident of a fireman's employment in a municipality that was a member of a mutual assistance contract. In reaching the same conclusion as does this court, the court in *Nelson v. Borough of Greensville,* 181 Pa. Super. 488, 124 *A.* 2d 675 (Pa. Super. Ct. 1956), distinguished between the direct supervision and immediate control of the chief of the aiding fire company over his own men from the coordinating function of the chief of the summoning fire company with respect to the activities of all the fire companies on the scene of the emergency.

For the foregoing reasons, the judgment below is affirmed.