IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Hershey Company, : 
          Petitioner : 
        : 
       v. : 
        : 
Shawn Woodhouse (Workers' : 
Compensation Appeal Board), :   No. 904 C.D. 2022
         Respondent :   Submitted: April 6, 2023


BEFORE:   HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE STACY WALLACE, Judge


OPINION BY
JUDGE COVEY                        FILED: August 3, 2023


The Hershey Company (Employer) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) July 25, 2022 order reversing in part the WC Judge's (WCJ) decision, and granting Shawn Woodhouse's (Claimant) petition for specific loss benefits (Claim Petition). The sole issue before this Court is whether the WCJ and the Board erred as a matter of law by concluding that Claimant provided timely constructive notice pursuant to Section 311 of the WC Act (Act)[1] that his November 6, 2017 injury was work related. After review, this Court reverses.


**Background**

Claimant began working for Employer full time on May 8, 2017, at which time he had a previous history of diabetic neuropathy. Claimant developed a right diabetic foot ulcer in June 2017, for which his podiatrist instructed him to rest

_____
[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 631.

his foot, and prescribed gel, medicine, and a DARCO Boot[2] (Boot). Employer did not permit Claimant to wear the Boot on the factory floor because he worked in the food industry[3] or remain seated while working because his job duties required he be able to see and check on the machines.[4] Thus, Claimant's doctor placed him off work from June 13, 2017 to August 26, 2017, during which time Claimant worked at Verizon Wireless.

On September 11, 2017, Claimant emailed Employer to inquire whether he could return to work with a full cast. He did not return to work at that time. On September 26, 2017, Claimant's doctor released him to work with one restriction, that he wear regular shoes due to his diabetic foot ulcer and infected blister. Thereafter, Claimant returned to work.

On November 6, 2017, Claimant passed out at work and was taken by ambulance to the Hershey Medical Center, where he was admitted. Claimant sent an email on January 2, 2018, to Carly Danz (Danz)[5] notifying Employer that after being taken from work by ambulance, Claimant had emergency foot surgery and was awaiting doctor approval to return to work. Claimant returned to work on March 22, 2018, and the following month underwent a below-the-knee amputation of his

---

[2] The DARCO Boot provides post-operative protection with a closed-toe design that keeps dressings and toes warm and dry, and accommodates bulky dressings. *See* https://darcointernational.com/product/apb-all-purpose-boot (last visited August 2, 2023).

[3] Claimant testified that "[b]ecause it's the food industry[,] [he] was told [he] was not allowed to wear it on the factory floor." Reproduced Record (R.R.) at 124a. Hershey required its factory floor employees to wear steel-tipped boots, but if an employee had foot problems, he or she could request to wear steel-tipped sneakers. *See* R.R. at 178a. Claimant regularly wore "steel tip boots, but [Employer] did allow [him] to wear a [steel-tipped] sneaker." R.R. at 124a.

[4] Claimant testified that although he had a chair, "[y]ou weren't supposed to sit for very long because you do have to watch the machine. You can't really sit there." R.R. at 177a-178a.

[5] Danz worked for Employer monitoring active and claimed work injuries.

2

right leg. Thereafter, he did not return to work and was awarded Social Security Disability benefits effective May 2018.[6]

On December 1, 2019, Claimant filed the Claim Petition, alleging therein that he suffered a work injury on November 6, 2017, consisting of an aggravation of a diabetic foot ulcer and a below-the-knee amputation of his right leg. Claimant asserted that the injury was caused by standing for long periods of time at work, bagging and wrapping product, and by not being able to use the medically prescribed Boot to protect his diabetic foot ulcer. Claimant did not seek disability benefits; rather, his claim was limited to specific loss benefits. Employer filed an answer denying that Claimant suffered a work injury and contending the Claim Petition was its first notice that Claimant was alleging he had suffered a work injury in 2017.

The WCJ held hearings on December 19, 2019, January 21, March 9, June 22, and September 2, 2020, and March 1 and May 27, 2021. On October 12, 2021, the WCJ granted Claimant's Claim Petition and awarded Claimant specific loss benefits for the loss of his great toe and remaining toes of his right foot, but denied specific loss benefits for Claimant's below-the-knee amputation. The WCJ also awarded Claimant litigation costs.

Concerning the notice issue, the WCJ opined:

Admittedly, the issue of notice in this dispute is a close call, particularly considering [] Danz's testimony regarding her understanding of the evidence offered by Claimant. Nevertheless, given this evidence from Claimant, and Claimant's reminder that the Act's notice requirement is to be liberally construed[FN]6, it will be concluded that an adequate basis for []Employer to have had constructive notice of Claimant suffering a work injury to his right foot existed by November 2017. In

---

[6] Claimant and Danz related that "[o]ut of a 312-work[-day] year, [Claimant] worked a total of 86.47 [days]." R.R. at 194a; *see also* R.R. at 331a.

3

short, Claimant did meet his burden of proof that notice of his injury was timely given to []Employer.

> [FN]6 Claimant, at an earlier point in his brief, cites *McCann v. Cross Bros. Meat Packers, Inc.*, 208 A.2d 887 (Pa. Super. 1965)[,] for the position that the notice requirement is to be liberally construed.[7]

Reproduced Record (R.R.) at 66a.

Claimant and Employer appealed to the Board. On July 25, 2022, the Board reversed the WCJ's decision as to the denial of relief for Claimant's below-the-knee amputation, and affirmed the WCJ's decision in all other respects. Regarding the notice requirement, the Board explained:

> The burden was on Claimant to establish timely and adequate notice of a work-related injury. [] Danz essentially corroborated Claimant's testimony as to the communications between Claimant and [Employer] and Claimant's provision of notes and restrictions pertaining to his right foot condition. **The WCJ** acknowledged that the issue in this matter was close, but he **made a factual determination that** [**Employer**] **had constructive notice** of Claimant's right foot condition and of the relationship between his foot condition and his employment duties as of Claimant leaving work on November 6, 2017, **given**

---

7

> [Although Claimant], . . . relie[d] on *McCann* . . . , for the proposition that a formalistic notice statement is not necessary where the employer has knowledge of the occurrence of the injury[,] . . . **the facts in *McCann* are distinguishable from the present case**. In *McCann*, there was a leak in the refrigeration system permitting ammonia fumes to escape into the claimant's working area. Further, the claimant's supervisor visited him in the hospital, and representatives of the employer's insurance carrier interviewed the claimant and members of his family. Here, [] [E]mployer was not aware that [Claimant] was alleging his [amputation] was a work-related injury until he filed the [C]laim [P]etition [23] months after [the amputation].

*City of Phila. v. Workmen's Comp. Appeal Bd. (Wills)*, 618 A.2d 1162, 1165 n.5 (Pa. Cmwlth. 1992).

4

**[Employer's] knowledge of the right foot ulcer and blister[,] and Claimant's restrictions and his need for alternative footwear while on his feet**, as well as [**Employer's**] *access to Claimant's medical records*.

R.R. at 105a-106a (citations omitted; bold and italic emphasis added). Employer appealed to this Court.[8]

## Discussion

Employer argues that both the WCJ and the Board erred as a matter of law by concluding that Claimant provided timely, adequate, and/or proper notice of his alleged work injury within the 120-day time period established by Section 311 of the Act.

Section 311 of the Act specifies:

> Unless the employer shall have knowledge of the occurrence of the injury,[9] or unless the employe . . . shall give notice thereof to the employer within [21] days after the injury, no compensation shall be due until such notice be given, and, **unless such notice be given within [120] days after the occurrence of the injury**, **no compensation shall be allowed**. However, in cases of injury . . . in which the nature of the injury or its

---

[8] "[This Court's] review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed[,] or whether constitutional rights were violated." *DiLaqua v. City of Phila. Fire Dep't (Workers' Comp. Appeal Bd.)*, 268 A.3d 1, 4 n.5 (Pa. Cmwlth. 2021) (quoting *Bristol Borough v. Workers' Comp. Appeal Bd. (Burnett)*, 206 A.3d 585, 595 n.6 (Pa. Cmwlth. 2019)).

[9] "[F]or the purposes of Sections 311 and 312 of the Act, [77 P.S. § 632,] **the term "injury" includes any medical malady *reasonably* associated with the work place incident or injury**, as well as any subsequent causally related medical problems stemming from that injury." *Crown Servs., Inc. v. Workmen's Comp. Appeal Bd. (Beck)*, 682 A.2d 1333, 1339 (Pa. Cmwlth. 1996), *aff'd*, 701 A.2d 221 (Pa. 1997); *see also City of Lower Burrell v. Workers' Comp. Appeal Bd. (Babinsack)* (Pa. Cmwlth. No. 120 C.D. 2019, filed Mar. 12, 2020).

5

> relationship to the employment is not known to the employe, **the time for giving notice shall not begin to run until the employe knows**, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment.

77 P.S. § 631 (emphasis added). The purpose of the Act's notice requirement is to "protect[] the employer from stale claims for accidental injuries, of which [the employer] would have no knowledge, made after the opportunity had passed for a full and complete examination thereof." *Penske Logistics v. Workers' Comp. Appeal Bd. (Troxel)*, 132 A.3d 1029, 1035 (Pa. Cmwlth. 2015) (quoting *Canterna v. U.S. Steel Corp.*, 317 A.2d 355, 356 (Pa. Cmwlth. 1974)).

Further, Section 312 of the Act mandates: "The **notice** . . . **shall inform** the **employer that a certain employe received an injury**, described in ordinary language, **in the course of his employment on or about a specified time**, at or near a place specified." 77 P.S. § 632 (emphasis added). The Pennsylvania Supreme Court has held: "Section 312 [of the Act] does not speak . . . to the determination of whether notice is adequate. . . . [T]he parameters of what constitutes adequate notice in a given case has been developed through our case law." *Gentex Corp. v. Workers' Comp. Appeal Bd. (Morack)*, 23 A.3d 528, 534 (Pa. 2011).

"[T]he claimant bears the burden of demonstrating that proper notice was given." *City of Pittsburgh v. Workers' Comp. Appeal Bd. (Flaherty)*, 187 A.3d 1061, 1066 (Pa. Cmwlth. 2018). The issue of whether adequate notice of injury was given to an employer "presents a mixed question of fact and law[.]" *Gentex*, 23 A.3d at 534. Further, "what constitutes adequate notice pursuant to Section 312 of the Act is a fact-intensive inquiry, taking into consideration the totality of the circumstances." *Id*. at 537. Moreover,

> [i]n a substantial evidence challenge,
>> it is irrelevant whether the record contains evidence to support findings other than those made

6

> by the WCJ; **the critical inquiry is whether there is evidence to support the findings actually made**. . . . We review the entire record to determine if it contains evidence a reasonable mind might find sufficient to support the WCJ's findings. . . . If the record contains such evidence, the findings must be upheld even though the record contains conflicting evidence.

> *Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (citations omitted).

*Columbia Cnty. Comm'rs v. Rospendowski (Workers' Comp. Appeal Bd.)*, 286 A.3d 436, 446 (Pa. Cmwlth. 2022) (emphasis added).

Here, Employer does not challenge the WCJ's findings of fact. Employer specifically contends that Claimant knew of the alleged causal connection between his amputations and his work-related duties in November 2017, but did not provide notice to Employer until his Claim Petition was filed in December 2019. The Board affirmed the WCJ's determination that Employer had "constructive notice" of Claimant's injury and of the relationship between his injury and his employment duties. R.R. at 105a-106a. The Board held that Claimant's "provision of notes and restrictions pertaining to his right foot condition"[10] and post-2017 amputation communications with Danz[11] constituted constructive notice that satisfied the Act. R.R. at 105a. Employer asserts that "Claimant's attempts to 'bootstrap' notice through documents must fail where the [communications between

---

[10] Specifically, Danz received: the June 12, 2017 doctor's note stating Claimant's Boot and seating restrictions; the June 12, 2017 doctor's note placing Claimant off work; the September 11, 2017 email from Claimant inquiring if he could return to work with a full cast; and the September 26, 2017 doctor's note releasing Claimant to work with one restriction - that he wear regular shoes. *See* R.R. at 329a-344a.

[11] Specifically, Danz received: a June 17, 2017 phone call from Claimant advising he was being admitted to the hospital due to "elevated cardiac enzyme [sic][,]" R.R. at 329a; the January 2, 2018 email from Claimant stating he had foot surgery; and a May 30, 2018 email from a co-worker stating: "[G]rapevine talk someone who talked to [Claimant] outside of work that he had to get his leg cut off." R.R. at 347a.

Employer and Claimant] fail to even initiate any causal connection between diagnoses and employment." Employer Br. at 23. Employer further cites injury logs in the record that indicate Claimant's injury as "non-occupational" as evidence that it did not have constructive notice of Claimant's injury. Employer Br. at 25.

Claimant rejoins that "based on the totality of the circumstances, there was enough information for Employer to have constructive notice of the work-relatedness of the aggravation of the ulceration that led to the infection and ultimate amputation." Claimant Br. at 11. Claimant does not dispute that the ulceration in and of itself is non-occupational, but contends that "the aggravation of the underlying ulcer by failing to properly offload [it] while at work is occupational in nature." *Id.* Additionally, Claimant contends that "Employer had enough information available to it to trigger its duty to investigate this claim as a work injury as required under Section 406.1 of the Act[12] as early as June 2017; however, it failed to do so." *Id.* at 12. Claimant asserts that he and Employer communicated multiple times in 2017 and 2018 before the end of the 120-day notice period, and

---

[12] Added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 717.1. Section 406.1(a) of the Act provides, in relevant part:

> The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or a notice of compensation payable as provided in [S]ection 407 [of the Act, 77 P.S. § 731 (relating to agreements),] or pursuant to a notice of temporary compensation payable as set forth in subsection (d), on forms prescribed by the department and furnished by the insurer.

77 P.S. § 717.1(a). Because Claimant did not develop this argument on appeal, this Court will not address it. *See Commonwealth v. Feineigle*, 690 A.2d 748, 751 n.5 (Pa. Cmwlth. 1997) (quoting *Wicker v. Civ. Serv. Comm'n*, 460 A.2d 407, 408 (Pa. Cmwlth. 1983)) ("When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof.").

that Danz's knowledge of Claimant's right foot ulcer was sufficient evidence to support a finding of constructive notice. *See id*. at 10-11.

During the September 2, 2020 hearing, Claimant admitted that he suspected that his amputation was related to his job duties in 2017; however, he did not notify Employer because Employer never asked him about it. Specifically, Claimant testified:

> Q. [Employer's Counsel:] [Claimant], I want to follow up on what I asked you at the first hearing. And that is, **when did you first <u>suspect or even believe</u> that you[r] job duties had anything to do with your amputation**? Was that in November of 2017 or April of 2018?
>
> A. [Claimant:] **2017**, **when I got my toes removed**.
>
> Q. Okay. So at that time you believe that your work duties had something to do with your amputations. Correct?
>
> A. Correct.
>
> Q. Okay. And that was following discussion with your doctors. Correct?
>
> A. Correct.
>
> Q. Okay. **And in 2017**, **you never said anything to anybody at [Employer] that you felt that your amputation had anything to do with your work duties**. Correct?
>
> A. **Nope**.
>
> Q. Am I right on that?
>
> A. Yeah.
>
> Q. Okay.
>
> A. **But they never asked me that**.

R.R. at 180a-181a (bold and underline emphasis added). Notably, Claimant was not aware that his toe amputations were work related until after "discussion with [hi]s

9

doctors[,]" R.R. at 180a, yet Claimant contends that Employer should have been aware that his toe amputations were work related based on Claimant's non-occupational condition coupled with his November 7, 2017 foot surgery.

> Further, during the December 19, 2019 hearing, Claimant testified:
>
> Q. [Employer's Counsel:] And you were told during orientation that if you suffer what you felt was a work[-]related injury or condition, **you were to immediately approach your supervisor and let them know**. Correct?
>
> A. [Claimant:] Correct.
>
> Q. You - **you never did that**. Correct?
>
> A. **No**, because I didn't - .
>
> Q. You didn't what?
>
> A. I wasn't dire when I was working.

R.R. at 137a (emphasis added). The WCJ found Claimant "on balance, credible" during both the December 19, 2019 and September 2, 2020 hearings. R.R. at 63a. Given Claimant's testimony, Section 311 of the Act required Claimant to provide Employer notice that his injury was work related within 120 days of November 7, 2017. Although Claimant informed Danz in the January 2, 2018 email that he had emergency foot surgery in November 2017, he made no reference to that surgery being work related.

> Specifically, Claimant wrote the following to Danz:
>
> My name is Shawn Woodhouse and in November I was taken from work to Hershey Med[ical Center]. I had emergency surgery on my foot. I am healing nicely and I am awaiting the approval to be in a normal shoe and return to work. I will be sure to give you all notes and releases before doing so.

R.R. at 374a. Because Claimant's email did not specify that his employment aggravated his condition, it did not satisfy Section 312 of the Act's notice

requirements. Claimant did not notify Employer that his foot surgery was work related until he filed his Claim Petition in December 2019, well beyond the statutorily mandated 120 days. For the first time, in his December 2019 Claim Petition, Claimant explained that "standing for long periods of time and continuing to work without the ability to protect his foot using an appropriate off[-]loading device aggravated and worsened [his] condition." R.R. at 7a.

Relative to Claimant's argument that his notice was acceptable as having been delivered through a *series of communications*, the series of communications between Claimant and Employer did not establish notice because Claimant knew his injury was work related in 2017, and he only informed Employer that it was work related in their last communication (i.e., the Claim Petition). In *Gentex*, our Supreme Court stated that notice under Section 312 of the Act "may be provided over a period of time or a *series of communications*, **if the exact nature of the injury is not immediately known by the claimant**." 23 A.3d at 537 (bold and italic emphasis added). However, Claimant admitted that he first knew in November 2017, when his toes were amputated, that his foot surgery was work related, but he did not provide notice of the same to Employer.

This case is distinguishable from the *series of communications'* cases our Supreme Court cited to in *Gentex*. In *State Workmen's Insurance Fund v. Workmen's Compensation Appeal Board (Wagner)*, 677 A.2d 892 (Pa. Cmwlth. 1996), this Court held that a claimant's initial conversation with her employer in a series of communications satisfied Section 312 of the Act _where the claimant mentioned in the initial conversation that she thought her disease was work related_. In *Kocher's IGA v. Workers' Compensation Appeal Board (Dietrich)*, 729 A.2d 145 (Pa. Cmwlth. 1999), this Court held that a claimant gave proper notice when the claimant was injured at work and _immediately informed her supervisor of the injury, stating that she was not sure whether it was work related_.

11

Here, Claimant did not mention that his foot surgery was work related or that he suspected it was work related until the last communication - the Claim Petition - in his *series of communications* with Employer regarding his diabetic foot ulcer. The communications between Claimant and Employer prior to the November 2017 surgery list his restrictions at work as "Non-Occupational" and "NOC."[13] R.R. at 363a. Thus, it was clear that both Claimant and Employer believed at that time that Claimant's right diabetic foot ulcer was not work related. Claimant, in the communications after his foot surgery and before the Claim Petition, never stated to Employer that he suspected or believed that his foot surgery was work related. It was not until the Claim Petition 23 months later that Claimant alleged that the foot surgery was work related.

> The notice required by Section 311 of the Act must "inform the employer that a certain employee received an injury, described in ordinary language, in the course of his employment on or about a specified time, at or near a place specified." 77 P.S. § 632. . . . [G]iven the totality of the circumstances, [Employer's knowledge of Claimant's right foot ulcer and blister and Claimant's need for alternative footwear and restrictions while on his feet, as well as Employer's access to Claimant's medical records,] were not sufficient to satisfy these criteria.

*Newman v. Workers' Comp. Appeal Bd. (Geisinger Cmty. Health Servs.)* (Pa. Cmwlth. No. 1850 C.D. 2016, filed Aug. 22, 2017), slip op. at 12.[14] Viewing the totality of these communications, substantial evidence does not support the WCJ's conclusion that Claimant communicated to Employer that his foot surgery was work related or that he suspected a work-related injury before the end of the 120-day

---

[13] NOC appears to stand for non-occupational created, as in "NOC restrictions." R.R. at 363a.

[14] This Court's memorandum opinions may only be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). This Court cites *Newman* for its persuasive value.

notice period. To hold otherwise would be placing the burden on an employer, every time a claimant has a non-occupational restriction, to review his medical records and determine if, and/or when, a non-occupational medical condition becomes work related. This is contrary to the Act's notice provision.

This is not a case where the *series of communications* can provide the required notice as it did in *Gentex*, because Claimant: (1) knew that he suffered a work-related injury in November 2017; (2) knew that he was to immediately report suspected work-related injuries to his supervisor; and (3) sent an email to Employer within the required 120 days without stating, or in any manner indicating, that his injury was work related. Because substantial record evidence did not support the WCJ's conclusion that Claimant provided Employer with adequate notice of his work-related injury pursuant to Section 312 of the Act within 120 days as required by Section 311 of the Act, this Court is constrained to reverse the Board's order.

## Conclusion

For all of the above reasons, the Board's order is reversed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Hershey Company,          :
          Petitioner     :
                           :
        v.               :
                           :
Shawn Woodhouse (Workers'   :
Compensation Appeal Board),   :   No. 904 C.D. 2022
          Respondent    :

## O R D E R

AND NOW, this 3rd day of August, 2023, the Workers' Compensation Appeal Board's July 25, 2022 order is reversed.

_____

ANNE E. COVEY, Judge